Jane Doe
[redacted]
v.
Jeffrey Epstein

**AFFIDAVIT OF RYAN C.W. HALL, M.D.**

STATE OF FLORIDA

COUNTY OF SEMINOLE

On this day personally appeared before me, the undersigned authority, Ryan C.W. Hall, M.D., who, being by me first duly sworn under oath deposes and says:

1. My name is Ryan C.W. Hall, M.D. I am over the age of majority, and make this affidavit and declaration upon the basis of personal knowledge of the factual matters contained herein.

2. I have maintained a private practice in psychiatry and forensic psychiatry since 2008.

3. I, also, currently serve as an Affiliate Instructor of the Department of Psychiatry and Behavioral Medicine at the University of South Florida, Tampa, Florida, and Assistant Professor of Psychiatry in the Department of Medical Education at the University of Central Florida College of Medicine.

4. I received my undergraduate degree from Johns Hopkins University and medical degree from Georgetown University.

5. No opinion of mine has ever been disqualified in a legal proceeding.

EXHIBIT "A"

Case 9:08-cv-80119-KAM Document 301-3 Entered on FLSD Docket 09/15/2009 Page 2 of 11

6. I was a Rappeport Fellow of the American Academy of Psychiatry and the Law in 2007.

7. I completed an additional year of training fellowship in Forensic Psychiatry at Case Western Reserve in 2007-2008.

8. I am Board Certified in Psychiatry by the American Board of Psychiatry and Neurology, with additional qualifications in Forensic Psychiatry.

9. The amended complaint filed by [redacted] against Jeffrey Epstein makes sensitive allegations of sexual assault and abuse upon a minor and seeks damages in excess of $50 million. [redacted] has filed a 5-count complaint in which she alleges emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of her childhood, and loss of dignity. It is further alleged that she suffered, and will continue to suffer, severe and permanent traumatic injuries, including mental, psychological, and emotional damages.

10. She alleges the intentional infliction of emotional distress and that Mr. Epstein's conduct caused severe emotional distress, severe mental anguish and pain.

11. She further alleges that she has suffered personal injury including mental, psychological and emotional damage.

12. Police records show that [redacted] came from an unstable and disturbed home where there were incidents of domestic violence, drug use, DCF investigations and criminal activity performed by her father. In 2002, prior to meeting Mr. Epstein, [redacted] was noted to be truant from school, smoking which is illegal for a minor, a habitual runaway and was described by her mother as being uncontrollable. Police and other judicial records also indicate that some of her siblings had similar problems and were the direct victims of domestic violence. In addition [redacted] has also claimed to suffer from the psychiatric condition of Posttraumatic Stress Disorder (PTSD) prior to meeting Mr. Epstein. This PTSD was alleged to be caused by witnessing (inconsistent statements by Ms. [redacted] about actual level of exposure and what happened) her father beating a child/common law stepbrother to death. For further elaboration of [redacted] history and background, a thorough psychiatric interview/examination and access to all available records is crucial if one is to fully understand the impact of any of these events on her subsequent behavior and proportion the impact of specific events, if any, or her current and future level of function.

13. It is critical for an IME examiner to be able to make a cogent assessment of any Plaintiff and to understand their medical, social, academic, psychological

and psychiatric condition/state prior to any act of alleged victimization. There are a number of variables that combine to determine the effects of such alleged victimization, including the type and character of the alleged assault, and key victim variables such as demographics, psychological reactions at the time of the trauma, previous psychiatric or psychological history, previous victimization history, current or previous psychological difficulties, and general personality dynamics and coping style, as well as sociocultural factors such as drug use/abuse; poverty; social inequity and/or inadequate social support; any previous history of abuse within or outside the family; whether individuals were abused by strangers, acquaintances or family members; and whether there was any history of indiscriminate behavior that may have placed them at increased risk. It is important to know if there had been previous sexual conduct, contact with police or welfare agencies, alcohol or drug use/abuse, consensual sexual activity, contraceptive use, genital infections, or apparent indifference to previous abuse.

14. It is also essential to understand the Plaintiff's level of emotional support, whether any significant psychiatric illnesses were present, whether they were taking any medications (prescribed or non-prescribed), whether there had been previous suicide attempts, thoughts, plans, etc.

15. Knowledge of Plaintiff's relationships to her family and familial factors, including social disadvantage, intrauterine exposure to toxic substances such as cocaine, family instability, impaired parent/child relationship, and parental adjustment difficulties is also critical.

16. It is, therefore, crucial that the independent medical examiner has available to him a full and complete record that includes medical, previous legal, social, criminal, academic, psychological and psychiatric records/data; psychological tests; laboratory tests; and clinical, hospital, physician records and that they have time to conduct a full and complete Independent Medical Examination.

17. The Independent Medical Examination will cover Plaintiff's full medical and psychiatric history, including: chief complaint, history of present illness, specific complaints of symptoms or injury, medical history, past psychiatric history, family history, abuse history, birth history, childhood history, school history, occupational history, violence history, legal history, relationship history, substance use history, sexual history, review of systems, activities of daily living, mental status examination, diagnoses using DSM-IV axes, and discussion of case findings and opinions.

18. Psychological tests and questionnaires to be administered include: Zung Depression Scale, Zung Anxiety Scale, Mini Mental State Examination,

MCMI-III, MMPI -2 with forensic implications, Life History Questionnaire, and Forensic Questionnaire.

19. Because Plaintiff's emotional and mental states have been put at issue, the undersigned must ask questions of Plaintiff regarding her physical, emotional and mental problems, in the past and in the present, in order to form an expert opinion. The IME requires the presence of only the Plaintiff and the examiner. Other individuals present will invalidate the process.

20. The presence of third-party observers, meaning persons other than the examiner/proctor and examinee, in the examining room is inconsistent with standardized administration of the tests (e.g. MMPI-2 and MCMI-III) and changes the testing environment considerably by introducing extraneous variables that may distract the examinee and alter the results of the IME.

21. I have been retained as an expert in this matter and have been asked to perform an independent medical evaluation of Plaintiff [redacted]

22. I understand that Plaintiff's counsel has requested to videotape the examination and have counsel, a court reporter, or both present in the room during the examination.

23. I strenuously object to allowing the presence of a videographer, court reporter and/or attorney being present in the room during my examination of

Case 9:08-cv-80119-KAM Document 301-3 Entered on FLSD Docket 09/15/2009 Page 7 of 11

Plaintiff [redacted]

24. A psychiatric examination, which consists of, but is not limited to, interview, mental status examination, and tests of intelligence, memory, attention, concentration, problem solving, sensory-perceptual functioning, motor functioning, psychomotor problem solving ability, is properly conducted in the absence of third parties from the examination site (i.e., court reporter, attorney, videographer). The presence of third parties often affects the examinee's responses to examination items and may alter or distract their stream of thought or cause undue embarrassment.

25. The presence of a videographer, court reporter and/or attorney in the examination room during my performance of an independent medical examination would create an artificial environment, distractions, and would compromise the integrity of my psychiatric examination. A video camera in the room connected to a monitor by cable outside the room would be acceptable.

26. Furthermore, enabling the presence of a videographer, court reporter and/or attorney in the examination room during my performance of an independent medical examination is a clear departure from the normal standards imposed within the psychiatric field for such an examination.

27. For the above reasons, I oppose having third parties present in the examination room during an examination and testing. I may choose not to perform the standard examination in the presence of third parties (court reporter, attorney, videographer) except under Court order and with the caveat that the test results may be invalid.

28. As part of the performance of an independent medical examination, I require that examinees complete a "Patient Questionnaire" and a "Forensic Questionnaire" designed to elicit historical information about the examinee, which assists in my performance of the clinical examination and gives the examinee opportunity to review records obtained and obtain appropriate data prior to the examination.

29. Requiring that a patient/examinee complete a questionnaire seeking the provision of historical information is a standard protocol of the clinical examination.

30. My ability to provide a complete and thorough independent medical examination is compromised without the provision of the historical information sought in my "Patient Questionnaire" and "Forensic Questionnaire."

31. Additionally, part of the independent medical examination consists of a

consultation with the examinee, in which history and background information is obtained, and administration of various written standardized tests and scales. The administration of such tests and scales goes to the essence of such examinations.

32. I have been asked to perform a psychiatric examination of Plaintiff [redacted] pursuant to a request in the above-styled cause for an independent medical examination.

33. The examination of Plaintiff will be conducted in compliance with the ethical principles and code to which I am bound as a licensed psychiatrist. Plaintiff will be allowed to take breaks, as she may need, to relax, eat, drink, and visit the restroom.

34. In the event that I must conduct an examination with an attorney present, but outside the examination room, I request that there be no interruption in the examination. Interruptions will distract the Plaintiff, disrupt the examination and skew the validity of the examination. If present at the site, the attorney should not coach the examinee during the examination, during breaks or otherwise.

35. It is not possible to predict the exact amount of time that will be necessary for an appropriate psychiatric examination of Plaintiff [redacted] because of

unknown variables such as the amount of information that will be covered in the consultation segment and the pace at which Plaintiff will perform the standardized tests. Such examinations generally take approximately six to seven hours (excluding any break time), with approximately four to six hours used for the face-to-face consultation segment and approximately two to three hours used for the testing segment. However, in this case, I anticipate the IME of Plaintiff to take <u>approximately</u> between five and eight hours, excluding break time. Additional time may be necessary for [redacted] complete testing on her own, but again most examinees complete the testing in two to three hours. If [redacted] has not completed the "Patient Questionnaire" and the "Forensic Questionnaire" before the examination, which was provided to her attorney prior to the examination, additional time will be needed to obtain pertinent historical information.

Respectfully submitted,

Ryan C W Hall MD

Ryan C. W. Hall, MD

Assistant Professor of Psychiatry, Department of Medical Education, University of Central Florida College of Medicine

Affiliate Instructor, Department of Psychiatry and Behavioral Medicine, University of South Florida

STATE OF FLORIDA
COUNTY OF SEMINOLE

**BEFORE ME**, the undersigned authority, personally appeared **RYAN C.W. HALL, M.D.**, who is (✓) personally known to me or ( ) who has produced ____________ as identification, and who did take an oath, deposes and says that the attached Affidavit is true and correct to the best of his knowledge and belief.

SWORN TO AND SUBSCRIBED before me on this 25th day of August, 2009.

Marcia J. Chapman
Notary Public
Printed Name: MARCIA J CHAPMAN
My Commission Expires:

MARCIA J. CHAPMAN
Comm# DD0561004
Expires 6/6/2010
Florida Notary Assn., Inc