UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-CIV- 80893 – MARRA/JOHNSON

JANE DOE,

                Plaintiff,

v.

JEFFREY EPSTEIN,

                Defendants.

_____/

**DEFENDANT EPSTEIN'S MOTIONS IN LIMINE PERTAINING TO
EVIDENCE OF *OTHER FEMALES* AND *SIMILAR FACT EVIDENCE*,
WITH INCORPORATED SUPPORTING MEMORANDUMS OF LAW**

Defendant, Jeffrey Epstein, (hereinafter "EPSTEIN") by and through his undersigned attorneys, respectfully moves this Court for the entry of an order excluding certain evidence that pertains to "other females," and further to enter an order in limine regarding similar fact evidence as specified below herein. Rules 401, 402, 403, 412, 413, 415, Fed.R.Evid. (2010). Defendant will be filing additional motions in limine as well. In support of this motion, Defendant states:[1]

**Notice of Related Motion**

Defendant EPSTEIN previously filed his *Motion For Separate Trial Or Bifurcation Of Plaintiff's Punitive Damages Claims, Rule 42(b), Fed.R.Civ.P., And Supporting Memorandum of Law* (hereinafter "motion to bifurcate") [DE 165]. The relief sought in the motion to bifurcate is related to this motion because Defendant has asked for a specified bifurcation procedure

---

[1] This motion is relevant to Plaintiff's punitive damages claim and further shows why such claim should be bifurcated. See Defendant EPSTEIN's *Motion For Separate Trial Or Bifurcation Of Plaintiff's Punitive Damages Claims, Rule 42(b), Fed.R.Civ.P., And Supporting Memorandum of Law* [DE 165].

Jane Doe  v. Epstein, et al.
Page 2

depending in part based upon the Court's ruling on this motion in limine.  Defendant requests

that the Court read both motions together prior to entering an order.

**Motion In Limine**

Defendant's motion in limine addresses the law and arguments pertaining to his

entitlement to have evidence of "other females" [2] except as specified herein excluded from trial.

The evidentiary analysis includes F.R.E Rules 401, 402, and 403, and the impact of F.R.E. Rule

415 - *Evidence of Similar Acts in Civil Cases*.

This motion is particularly apt now in that Plaintiff served her witness list on June 21,

2010 listing in excess of 44 other females who Plaintiff expects/may call at trial.  Most of these

individuals have not been deposed nor were they specifically identified by Plaintiff until the

witness list was filed.  Although earlier this month Plaintiff's attorney was going to send us a

"confidential" list of individuals whom Plaintiff might call – it was never sent.

**Introduction**

Plaintiff JANE DOE's First Amended Complaint [D.E. 38] attempts to assert state law

claims in Count I for *Sexual Battery upon a Minor*, in Count III – *Intentional Infliction of*

*Emotional Distress*, and in Count V, a statutory claim pursuant to Florida Statute §796.09,

*Coercion; civil cause of action; evidence; defenses; attorney's fee*s (eff. Oct. 1, 1993).  Count II

is a federal statutory claim brought pursuant to 18 U.S.C. §2255.  On June 21, 2010, Plaintiff's

counsel served his witness list which lists 172 witnesses, which includes in excess of forty-four

(44) other females who have asserted claims against EPSTEIN or claim to have been at his

---

[2] "Other females" will be used to refer to other females who brought civil actions or asserted claims
against EPSTEIN based on alleged massages/encounters of a sexual nature with EPSTEIN.

Jane Doe  v. Epstein, et al.
Page 3

home, regardless of whether such females have any personal knowledge of Plaintiff JANE

DOE's claims or had a personal relationship with JANE DOE during the relevant time period.

The elements necessary to prove JANE DOE's claim (not any other person) and any

compensatory damages or punitive damages do not require that Plaintiff put on any witness,

deposition, or documentary evidence, by opening or closing argument, by complaint allegations,

or by other means, regarding other females who  brought separate civil actions or asserted claims

against EPSTEIN and what allegedly occurred between EPSTEIN and any other females and

what, if any, were their claimed damages.  Such evidence is not relevant to any of the claims or

defenses in this action.  Such evidence does not have any tendency to make the existence of any

fact that is of consequence to the determination of the action more or less probable than it would

be without the evidence.  In the alternative, if found relevant, such evidence is required to be

excluded as any probative value would be substantially outweighed by the danger of unfair

prejudice, confusion of the issues, and misleading of the jury, as well as undue delay and waste

of time.  Rules 401, 402, and 403, Fed.R.Evid. (2010).  As specified more fully below herein, the

only other females that should be allowed as witnesses are LM (and possibly EW) because

during the relevant time period they were friends of JANE DOE and have personal knowledge

relevant to her claims against EPSTEIN or about JANE DOE and her claims for damages.

Defendant EPSTEIN intends to invoke his Fifth Amendment Privilege as guaranteed by

the United States Constitution when called as a witness during trial, just as he has done during

the course of this litigation prior to trial.  Thus, any evidence regarding the elements of Plaintiff's

claims; i.e., her age, the number of encounters with EPSTEIN, what happened during the

encounters at EPSTEIN's Palm Beach mansion; what actual or compensatory damages are

Jane Doe  v. Epstein, et al.
Page 4

claimed by JANE DOE, will be based in large part on JANE DOE's own testimony or what she

told others.  JANE DOE's version of what happened will not be countered by any testimony of

EPSTEIN himself.  Defendant, through counsel, will cross-examine Plaintiff regarding her

version of what happened, and will cross examine and  call other witnesses (including experts)

who will testify as to evidence relevant to JANE DOE's claims and her damages, if any.  The

same is true for EPSTEIN's asserted affirmative defenses – EPSTEIN will be invoking the Fifth,

and thus, proving his defenses through the testimony of JANE DOE and other witnesses who

have personal knowledge regarding JANE DOE and her asserted claims through documentary

evidence.  Parading other females in front of the jury and having them testify as to their

involvement with EPSTEIN has no tendency to make the existence of any consequential fact in

this action more or less probable.

        In her First Amended Complaint (which when plead still asserted a RICO claim) JANE

DOE alleges that at all material times, JD was a resident of Palm Beach County, Florida, and

Defendant, EPSTEIN, has a residence located in Palm Beach County, Florida, specifically, a

mansion in Palm Beach. [1st Am. Comp, ¶3, 5, 15, 20]. "Plaintiff, Jane Doe, was first brought to

Defendant Epstein's mansion in early 2003, when she was a fourteen-year old in middle school."

[1st Am Comp, ¶16].  Plaintiff further alleges -

> Plaintiff Jane Doe was contacted by Defendant Jeffrey Epstein himself or Sarah
> Kellen or other unknown employees or assistants of Defendant Epstein on numerous
> occasions, and she was often times brought to Defendant Epstein's residence with
> the assistance of Defendant Epstein's assistants.  [1st Am Comp, ¶12].

> Sarah Kellen or other employees/assistants of Defendant Epstein would often
> arrange with Yellow Cab company to take minor girls, including Jane Doe, to
> Defendant Epstein's house.  [1st Am Comp, ¶13].

Jane Doe  v. Epstein, et al.
Page 5

Beginning in approximately February 2003 and continuing until approximately June 2005, the defendant coerced and enticed the impressionable, vulnerable, and economically deprived then minor Plaintiff in order to commit various acts of sexual misconduct against her. ... . [1st Am Comp, ¶18].

The above described sexual acts took place in Palm Beach County, Florida, at the residence of Defendant, Jeffrey Epstein. ... . [1st Am Comp, ¶20].

The above-described acts were perpetrated upon the person of the then minor Plaintiff regularly and on dozens of occasions. [1st Am Comp, ¶21].

As noted above, Defendant expects to call the other females, LM and EW in limited capacities, as witnesses at trial. LM is being called to testify to the fact that she was a friend of Plaintiff, that it was she who first told Plaintiff about being able to earn money by performing massages for a man (EPSTEIN) in Palm Beach, that she told Plaintiff she would have to remove her clothes, that she told Plaintiff you can earn more money the more you're willing to do, that it was she who first took the Plaintiff to EPSTEIN's Palm Beach home to perform a massage, that she was present in the room with Plaintiff during this first encounter, and that she instructed Plaintiff to take her clothes off. LM will also testify to her relationship with Plaintiff, including that she partied and did drugs with Plaintiff, and that she knew Plaintiff returned to EPSTEIN's Palm Beach home on many occasions to be paid for giving massages.

EW is being called by Defendant to testify to the fact that she was also a friend of Plaintiff during the relevant time period, that she and Plaintiff partied and did drugs together, that she knew Plaintiff was going to EPSTEIN's home on many occasions to be paid money for massages, and that she asked Plaintiff if she wanted to become a dancer/stripper.

Both LM's and EW's testimony is based upon their personal relationship with Plaintiff and is clearly relevant. Their testimony is relevant to how JANE DOE first heard of and was brought to EPSTEIN's Palm Beach home; what JANE DOE's personal life was like during the

Jane Doe  v. Epstein, et al.
Page 6

relevant time period, and to a lesser extent, thereafter; whether the visits to EPSTEIN's home by

JANE DOE were voluntary; and Plaintiff's claim for damages as a result of her alleged

encounters with EPSTEIN.  As well, their testimony will be used to impeach or counter the

testimony of JANE DOE.

Except for the first time JANE DOE went to EPSTEIN's Palm Beach home with LM,

there was never any other female present during her alleged multiple encounters with EPSTEIN.

Under applicable law, whether EPSTEIN had encounters with other females, what allegedly

happened during those other encounters, and what the claims of the other females are, have no

relevance regarding Plaintiff JANE DOE's asserted claims.  What happened with other females

who were not present during JANE DOE's alleged encounters with EPSTEIN has absolutely no

bearing in proving (or disproving, for that matter) the elements of liability for her claims, and the

resulting compensatory damages suffered by JANE DOE or punitive damages, if any.  What is

relevant is what happened to JANE DOE and what damages she claims to have suffered.   In

addition, United States Supreme Court pronouncements also make clear that with respect to

Plaintiff's claim for punitive damages, a jury is to award an amount to punish the Defendant for

the harm done to the Plaintiff before the court, not some other nonparties or other alleged

victims. (See case law discussed in Defendant's *motion to bifurcate* filed on June 25, 2010 [DE

165].

Because EPSTEIN will be invoking the Fifth Amendment Privilege, the Defendant will

neither be confirming nor disputing Plaintiff's version of what happened.   The only eye witness

testifying as to what happened during the encounters with Defendant is the Plaintiff, JANE DOE,

Jane Doe  v. Epstein, et al.
Page 7

herself, and LM only as to the first encounter.  Sarah Kellen, who is referenced in Plaintiff's

complaint allegations, has also invoked her Fifth Amendment privilege

The testimony of other females (other than the limited testimony of LM and EW as

described above) does not have "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be

without the evidence."  Rule 401, Fed.R.Evid. (2010).  JANE DOE will testify as to the alleged

elements of her claims and the actual/compensatory damages she claims to have suffered.

EPSTEIN will not be countering Plaintiff's version of the facts because he is invoking the Fifth.

EPSTEIN in attempting to prove his affirmative defenses that are fact based (as opposed to law

base) will also be relying on the testimony of JANE DOE and witnesses with personal

knowledge as to JANE DOE's visits to EPSTEIN's Palm Beach mansion to give massages of a

sexual nature in exchange for money or her claimed injuries.  For example, regarding the fact

based defenses of consent or that JANE DOE's claimed damages are result of other events in

JANE DOE's life, EPSTEIN, through counsel, will cross-examine JANE DOE and examine

other witnesses, including but not limited to, JANE DOE's doctors, psychologist or psychiatrist,

family members, co-workers and employers, and others having a personal relationship with

JANE DOE.  Testimony from other females with no personal knowledge of JANE DOE's

claimed encounters with EPSTEIN or with no personal relationship with JANE DOE does not

have any tendency to make the existence of any fact that is of consequence to the determination

of the action more probable or less probable, and thus, is not relevant and required to be

excluded.  Simply stated, evidence that is not relevant is not admissible.  Rules 401 and 402,

Fed.R.Evid.

Jane Doe  v. Epstein, et al.
Page 8

In the alternative, should the Court determine that evidence regarding other females is somehow relevant (which it is not), such evidence is required to be excluded in that any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury, as well as undue delay and waste of time. Rules 401, 402, and 403, Fed.R.Evid. (2010). Except for LM and EW as described above, no other female has personal knowledge regarding this Plaintiff's claims and the defenses that apply to this Plaintiff's claims. Parading other females in front of a jury and allowing them to testify as to what they allege their involvement with EPSTEIN was, how they came to be there, what happened during the encounters with EPSTEIN at his Palm Beach home, how it affected them, what their claimed damages are; in other words, conducting individual mini-trials, along with this Plaintiff's claims would result in (at the very least) the danger of unfair prejudice, confusion of the issues, and misleading the jury. Rather than being able to focus on the claims of this particular Plaintiff and her alleged damages, the jury would be presented with the stories of other females and their particular claims and alleged damages in addition to the extensive cross examination of those witnesses and the need to call other witnesses to place their claims in perspective. A jury could easily be prejudiced into determining liability in this action since all these other females are claiming to have had encounters with EPSTEIN which resulted in damages. The jury would have a tendency to award a greater amount of compensatory damages than actually incurred by Plaintiff based on the claims of the other females. A jury would be prejudiced into thinking – "Look what these other females claim that the Defendant did and how they have claimed to suffer, certainly he is liable to this Plaintiff for damages."

Jane Doe  v. Epstein, et al.
Page 9

Another aspect of allowing other females to be paraded before the Court and jury is that in essence trials within a trial will take place.  If Plaintiff is allowed to present the testimony of other females (other than LM and EW as specified herein), Defendant will then be required to cross examine each other female, present additional evidence through other witness to counter and impeach the other females' testimonies and claims.  Such trials within JANE DOE's trial of her claims would result in undue delay and a waste of time in the trial of this action.  To deny EPSTEIN his right to effectively cross examine these other females would be overwhelmingly prejudicial to the Defendant.

Thus, in the alternative to the Court determining that evidence regarding other females is not relevant and not admissible, any probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, and by delay and waste of time, and required to be excluded.

### Memorandum of Law In Support of Defendant's Motion in Limine-

### Rules 401 and 402, Fed.R.Evid.(2010) – Evidence which is not relevant is not admissible.

All evidence is subject to certain basic principles of admissibility under the Federal Rules of Evidence.  Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 provides that all relevant evidence is admissible, except as otherwise provided by federal law or rule, and evidence which is not relevant is not admissible.  Thus, the Court must determine, first, whether the evidence that the Plaintiff seeks to introduce and that the Defendant seeks to exclude is relevant to any fact of consequence to the determination of this case.  If the evidence is relevant, the Court must then

Jane Doe  v. Epstein, et al.
Page 10

consider Rule 403, which provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  See generally, <u>Cabello Barrueto v. Fernandez Larios</u>, 2003 WL 22697724, 2 (S.D. Fla. 2003).

Evidence is inadmissible if it fails to meet the definition of Rule 401- such evidence must be without probative value as to any fact of consequence to the determination of the action.  If it is relevant as to any issue, it is relevant to the action and is not inadmissible under Rule 402.  See generally, <u>U. S. v. Allison</u>, 474 F.2d 286 (5th Cir. 1973), op. vac. on other grounds on rehrg. 490 F.2d 79, cert. den. 95 S.Ct. 91, 419 U.S. 851, 42 L.Ed.2d 82("Relevancy" describes the logical relationship between a proffered item of evidence and a proposition that is material or provable in a given case, with the relevance or irrelevancy of particular evidence turning on the facts of an individual case.);   <u>Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.</u>, 630 F.2d 250, 267 (Cir. Tex. 1980).   Finally, the District court is accorded wide discretion in determining admissibility of evidence. <u>Sprint/United Management Co. v. Mendelsohn</u>, 128 S. Ct. 1140 (U.S. 2008).

The particular facts of this case are that JANE DOE has brought civil claims against EPSTEIN seeking damages that are personal to her based on allegations that are personal and specific to her.   Again, testimony or evidence regarding other females without personal knowledge of JANE DOE's encounter with EPSTEIN or a personal relationship with EPSTEIN create no tendency to make any fact relevant to her causes of actions or damages or EPSTEIN's defenses as to her more or less probable if such evidence were not offered.  As more specifically

Jane Doe  v. Epstein, et al.
Page 11

addressed herein, the elements of each claim are personal to JANE DOE just as any claimed

damages are personal to JANE DOE.  Any fact based defense asserted by EPSTEIN (as opposed

to law based defenses, i.e., 18 U.S.C.§ 2255 limitations, constitutional limitations on punitive

damages awards, etc.),  would be based on facts specific to JANE DOE and what happened

during her alleged multiple encounters, what was and is JANE DOE's life style, what are the

emotional and physical damages that JANE DOE claims to have suffered as a result of the

alleged claims.  This is not a products liability case where a manufacturer is claiming its product

caused no harm to consumers and thus, such evidence of harm to other consumers would be

potentially admissible.  These are personal claims, based on facts personal to the Plaintiff in this

case; her damages, if any, are personal.  For example, simply because other females claim to

have suffered psychological trauma does not make the suffering of psychological trauma by

JANE DOE more or less probable.

Under Florida law, sexual battery is an intentional tort, Doe v. Celebrity Cruises, Inc., 394

F.3d 891, 917 (11th Cir. 2004).  In general, a battery consists of:

> the intentional infliction of a harmful or offensive contact upon the person of
> another, see Chorak v. Naughton, 409 So.2d 35 (Fla. 2d DCA 1981), but [t]he
> defendant must have done some positive and affirmative act ... which must cause,
> and must be intended to cause, an unpermitted contact.

See generally, Sullivan v. Atlantic Federal Sav. & Loan Ass'n., 454 So.2d 52, 54 -55 (Fla.

4th DCA 1984); and Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972).  The tort of "battery"

consists of the infliction of a harmful or offensive contact upon another with the intent to cause

such contact or the apprehension that such contact is imminent.  Quilling v. Price, 894 So.2d

1061 (Fla. 5th DCA 2005).

Jane Doe  v. Epstein, et al.
Page 12

Relevant evidence to prove the battery claim would be what EPSTEIN's conduct and actions were as to JANE DOE, not other females, and what the compensatory or actual damages, if any, to her as a direct and proximate result of EPSTEIN's conduct and actions involving her. EPSTEIN will not be testifying during the trial of this matter as, under the advice of counsel, he will be invoking the protections of the Fifth Amendment against self incrimination. Thus, other than cross-examination by defense counsel, there will be no counter testimony from EPSTEIN as to what happened during the alleged encounters. The jury will be hearing JANE DOE's version. There is absolutely nothing that the other females could testify to regarding JANE DOE's claims or EPSTEIN's defenses as to JANE DOE.

Also under Florida law, the elements of claim for intentional infliction of emotional distress (hereinafter "IIED") are:

(1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;

(2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(3) the conduct caused emotional distress; and

(4) the emotional distress was severe.

Brown v. Brown, 800 So.2d 359, 362 -363 (Fla. 4th DCA 2001).

"[T]he plaintiff must show conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Byrd v. BT Foods, Inc., 948 So.2d 921, 928 (Fla. 4th DCA 2007). "Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact." Id. The jury needs to

Jane Doe  v. Epstein, et al.
Page 13

judge whether Plaintiff's voluntary repeat encounters with EPSTEIN  meet the element of this claim, not some other person's experience.  Plaintiff had to make a voluntary decision to go to and then drive to EPSTEIN's home each time she went.  For what purpose - to suffer extreme emotional distress??  -That is nonsensical.

Evidence regarding the claims of other females who have brought their own civil action and evidence regarding EPSTEIN's alleged conduct involving them and the resulting damages, if any, is neither relevant to this Plaintiff's compensatory damages claims, nor relevant to her punitive damages claims as such damages are awarded based upon the defendant's harm directed to and suffered by the particular plaintiff.   (See Plaintiff's *motion to* bifurcate ) [DE 165]. Evidence as to what occurred between Plaintiff JANE DOE and EPSTEIN, and the resulting compensatory or actual damages, if any, is relevant.  Again, testimony of other females who have no personal knowledge regarding JANE DOE and her asserted claims do not have any tendency to make the existence of any fact of consequence more or less probable in this action.

Count V is state statutory claim brought pursuant to §796.09, Fla. Stat., which creates a civil right of action for a person against a person who (a) coerced that person into prostitution; (b) coerces that person to remain in prostitution; or (c) uses coercion to collect or receive any part of that person's earnings derived from prostitution.  Plaintiff alleges that EPSTEIN "used his vast wealth and power to coerce (her) into prostitution and/or coerced her to remain in prostitution."  1st Am Comp, ¶57.  "Prostitution" has the same meaning as in Florida's criminal statute 796.07.  "'Prostitution' means the giving or receiving of the body for sexual activity for hire but excludes sexual activity between spouses."  §796.07(a), Fla. Stat.  The statute itself speaks in terms of a cause of action for "that person."  Again, using the same analysis as above,

Jane Doe  v. Epstein, et al.
Page 14

parading other females in front of the jury does not supply evidence to JANE DOE's claim or

damages, if any.  There is no evidence whatsoever that EPSTEIN acted as JANE DOE's pimp or

that he collected, received, or derived any money from her.  See §796.09, Fla. Stat.

Section 796.09, Florida Statutes, was enacted on the recommendation of the Report of the

Florida Supreme Court Gender Bias Study Commission, which makes clear that the statute was

intended as a means for a prostitute to sue her pimp.  The majority of the Gender Bias Study

Commission as it related to prostitution focused on pimps and procurers, rather than clients (or

"johns").  Indeed, "[o]ne of the most notable deficiencies in the Florida statute [§796.09] is the

**exclusion** of johns and attempted johns as defendants."  See Shay-Ann M. Heiser Singh, The

Predator Accountability Act: Empowering Women in Prostitution to Pursue Their Own Justice,

56 DePaul L. Rev. 1035, 1048 (2007) (emphasis added).  The article compares Fla. Stat. §796.09

to a similar statutes in Minnesota, Illinois and Hawaii which, unlike the Florida statute, do

impose civil liability against johns and attempted johns in certain circumstances.  Id. at 1048 –

50.  It also distinguishes between the men who coerce women into prostitution (pimps) and the

customers who use their services (johns).  Id. at 1041-42.  There is no suggestion in the Florida

Supreme Court Gender Bias Study Commission that clients of prostitutes were intended to be

encompassed in Fla. Stat. §796.09, which provides a cause of action against a person who

"coerced" another into prostitution, "coerced" another to remain in prostitution or used coercion

to collect earnings derived from prostitution.

As noted above, JANE DOE has also attempted to assert a claim pursuant to 18 U.S.C.

§2255, effective 1999 to Jul. 26, 2006.  Defendant previously filed *Defendant EPSTEIN's*

*Motion For Summary Judgment, Including Supporting Memorandum of Law (combined)*, dated

Jane Doe  v. Epstein, et al.
Page 15

March 11, 2010 [DE 130], and as shown by the discussion of law and the deposition testimony of JANE DOE referenced therein, <u>and incorporated by reference herein</u>, the success or failure of JANE DOE's §2255 claim and actual damages, if any, hinges on facts specific to her, not on facts pertaining to other females.  None of the other females can offer any evidence or testimony that would make whether or not EPSTEIN called JANE DOE on the telephone or transported JANE DOE for the express purpose of engaging in illicit sexual conduct more or less probable. As set forth in DE 130, JANE DOE herself did not provide any testimony to support this claim. JANE DOE's claims and EPSTEIN's fact based defenses hinge on facts specific to JANE DOE and her alleged interactions and encounters with EPSTEIN and "EPSTEIN's assistants."

Accordingly, testimony of and evidence pertaining to other females is not relevant in this case and is inadmissible.

### <u>Rule 403, Fed.R. Evid. – Exclusion of Relevant Evidence</u>

In the alternative, if the Court determines that such evidence is relevant, such evidence is required to be excluded pursuant to Rule 403 because any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, and by considerations of undue delay, and waste of time.  (See Defendant's *motion to bifurcate* [DE 165] for additional discussion and law relevant to unfair prejudice, confusion of issues and misleading the jury.)

The Advisory Committee Notes to Rule 403, Fed.R.Evid., explain in relevant part that -

> The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy

Jane Doe  v. Epstein, et al.
Page 16

Unraveled, 5 Kan.L.Rev. 1, 12-15 (1956); Trautman, Logical or Legal Relevancy--A Conflict in Theory, 5 Van.L.Rev. 385, 392 (1952); McCormick § 152, pp. 319-321. The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated.

Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

*     *     *     *     *

In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction. See Rule 106 [now 105] and Advisory Committee's Note thereunder. The availability of other means of proof may also be an appropriate factor.

Rule 403 is "meant to relax the rule of relevance, by preserving the fairness of the proceedings by excluding evidence, despite its relevance." 29 Am.Jur.2d *Evidence* §330, citing U.S. v. McCrae, 593 F.2d 700(5th Cir. 1979). See also §90.403, Fla. Stat.[3]

Notwithstanding that the exclusion of relevant evidence under Rule 403 "is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence," United States v. Ross, 33 F.3d 1507, 1524 (11th Cir.1994), the unique circumstances of this case are such that it exemplifies the necessity for exclusion as discussed more fully below herein.  The Eleventh Circuit has held that "a trial court's discretion to exclude evidence as unduly prejudicial is 'narrowly circumscribe[d]' " and "[t]he 'major function' of Rule 403 is 'limited to excluding matter of scant or cumulative probative force,

---

[3] "The criteria for excluding evidence under Fla. Stat. § 90.403 and the federal rule are substantially the same, except that the latter also permits the exclusion of evidence if the probative value is outweighed by 'undue delay [or] waste of time.'" Childers v. Floyd, 2010 WL 2274481, 28, fn. 8 (11th Cir. Fla. 2010).

Jane Doe  v. Epstein, et al.
Page 17

dragged in by the heels for the sake of its prejudicial effect.'" <u>United States v. Dean</u>, 221 Fed.

App'x 849, 852 n. 3 (11th Cir.2007).    Exclusion under Rule 403 is only warranted when

admission of evidence rises to the "level of *unfair* prejudice." <u>United States v. Elkins</u>, 885 F.2d

775, 785 (11th Cir.1989) (emphasis in original).  Admission of the "other females" type evidence

certainly rises to the required "level of unfair prejudice."

    As previously stated, it is Defendant's position that the testimony of and evidence

regarding other females (except LM and EW) have no relevance to any issue in this action.  Any

probative value found by the Court would be "of scant or cumulative probative force, dragged in

by the heels for the sake of its prejudicial effect." <u>U.S. v. Dean</u>, supra.  There are several other

females who have or are also asserting claims for damages against EPSTEIN.  This and the other

civil cases brought against EPSTEIN are the type of case in which the jury's emotions could

easily control the outcome.  If testimony and evidence pertaining to the other females were

allowed to be presented to the jury, instead of focusing on the facts specific to JANE DOE's

claims and her claimed damages, a jury would hear testimony and evidence related to different

claims and different damages of other females.  In other words, the trial of JANE DOE would

easily become the trials of the other females.   The other females would be subject to cross

examination; other witnesses who might counter the other females' claims would also be called

to testify.  The effect of parading other females in front of the jury would be unfairly prejudicial

to EPSTEIN, confuse and mislead the jury as to what claims are being tried and defended, and

result in undue delay and waste of time.  The trial length of JANE DOE would easily take 3 to 4

times longer if evidence pertaining to other females were presented.

Jane Doe  v. Epstein, et al.
Page 18

As argued in his *motion to bifurcate* [DE 165], whether EPSTEIN is found liable on any claims and whether compensatory or punitive damages are awarded should be based on the evidence specific to a particular plaintiff, JANE DOE and not on what may or may not have occurred as between EPSTEIN and other Plaintiffs or nonparties, and what their claimed damages are.   Keeping the evidence pertaining to other females who have no personal knowledge or personal relationship with JANE DOE (like LM and EW) ensures that the jury stays focused on the claims and defenses pertaining only to JANE DOE.   The alleged facts of this case are emotional enough without having other females paraded before the jury.   F.R.E. Rule 403's purpose of ensuring a fair trial is starkly applicable in this case.

Any limiting instruction would not cure this undue and unfair prejudice.   The determination of EPSTEIN's liability should be based on evidence particular to JANE DOE and her alone.

Thus, this Court should enter an order determining that evidence pertaining to other females is inadmissible because it is not relevant; or in the alternative, any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, as well as, undue delay and waste of time.

### Evidence Pertaining to "other females" is also inadmissible under a Fed. Rule Evid. 415 Analysis

Plaintiff JANE DOE is likely to attempt to argue that "other female" evidence is admissible pursuant to  Rule 415 - *Evidence of Similar Acts in Civil Cases Concerning Sexual Assault or Child Molestation.*  As discussed more fully below herein, this Court must determine whether the other females' incidents were sufficiently similar to JANE DOE'S experiences with EPSTEIN (i.e.  JANE DOE claims to have had 15-20 encounters with EPSTEIN; however, the

Jane Doe  v. Epstein, et al.
Page 19

other females may have had only one or two experiences with Epstein).  Under the three step

legal analysis employed by the Courts in determining admissibility pursuant to Rule 415, the

evidence pertaining to the other females does not constitute similar fact evidence, and thus, is in

admissible.  See Rudy-Glanzer v. Glanzer, 232 F.3d 1258 (9th Cir. 2000).  Again, and in the

alternative, should this Court determine that certain evidence does constitute similar fact

evidence under Rule 415, such evidence is still required to be found inadmissible under Rule 403

because any probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, misleading the jury, as well as, undue delay and waste of time.  Id; (See

discussion of Rule 403 above herein).

      Rule 415 provides –

> (a) In a civil case in which a claim for damages or other relief is predicated on a party's alleged commission of conduct constituting an offense of sexual assault or child molestation, evidence of that party's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered as provided in Rule 413 and Rule 414 of these rules.

> (b) A party who intends to offer evidence under this Rule shall disclose the evidence to the party against whom it will be offered, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

> (c) This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

      Under Rule 415, in a civil action for damages "predicated on a defendant's alleged

commission of conduct constituting an offense of sexual assault[4], evidence of the defendant's

commission of another offense or offenses of sexual assault is admissible and may be considered

---

[4] Rule 414, *Evidence of Similar Crimes in Child Molestation Cases*, has no application to this action as neither this Plaintiff nor any of the "other females" claims that they were under the age of 14 at the time of the alleged encounter(s) with EPSTEIN.  See subsection (d) of Rule 414.

Jane Doe  v. Epstein, et al.
Page 20

as provided in Rule 413."  Rule 413 provides that when a defendant "is accused of an offense of

sexual assault, evidence of the defendant's commission of another offense or offenses of sexual

assault is admissible, and may be considered for its bearing on any matter to which it is

relevant."  Fed. R. Evid. 413(a).  Subsection (d) of Rule 413 defines "sexual assault" as –

> (d) For purposes of this rule and Rule 415, "offense of sexual assault" means a
> crime under Federal law or the law of a State (as defined in section 513 of title 18,
> United States Code) that involved—
>
> (1) any conduct proscribed by chapter 109A of title 18, United States Code;
>
> (2) contact, without consent, between any part of the defendant's body or an
> object and the genitals or anus of another person;
>
> (3) contact, without consent, between the genitals or anus of the defendant and
> any part of another person's body;
>
> (4) deriving sexual pleasure or gratification from the infliction of death, bodily
> injury, or physical pain on another person; or
>
> (5) an attempt or conspiracy to engage in conduct described in paragraphs (1)–(4).

In determining whether evidence is admissible as similar fact evidence, the majority of

the federal circuits employ a three-step analysis and balancing test.  See Rudy-Glanzer v.

Glanzer, supra at 1267-1269 under heading – "Prior Sexual Misconduct."  (In Glanzer the Court

correctly excluded the prior evidence of alleged molestation because of remoteness in time – 15

years between incidents, lack of similarities between alleged acts, and the unreliability of the

witness, among other factors.  The Court determined that any probative value was substantially

outweighed by the danger of unfair prejudice if such evidence were admitted.  See discussion

below herein.)  As summarized by the Rudy Glanzer Court:

> To determine whether Fed.R.Evid. 415 applies to evidence that a party is
> seeking to introduce at trial, courts adopt a three-step inquiry. See Frank v. County of
> Hudson, 924 F.Supp. 620, 625-26 (D.N.J.1996).  **First, the defendant must be**

Jane Doe  v. Epstein, et al.
Page 21

accused of an offense of sexual assault or child molestation; **second, the evidence being proffered must relate to the commission of another offense of sexual assault** or child molestation; and **last, the evidence has to be relevant.** *See* <u>United States v. Guardia</u>, 135 F.3d 1326, 1328, 1332 (10th Cir.1998) (discussing Fed.R.Evid. 413's relation to Fed.R.Evid. 403). With respect to this last prong, it is generally accepted that a defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant and in conformity with the standards set out in Fed.R.Evid. 401 & 402. ... .

**Courts which find that the evidence proffered meets the three criteria outlined above, then subject that same evidence to the dictates of Fed.R.Evid. 403** which provides that the district court may exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice" to the party against whom the evidence is offered. Fed.R.Evid. 403; *see* <u>United States v. Sumner</u>, 119 F.3d 658, 661 (8th Cir.1997). ... .

**Because of the inherent strength of the evidence that is covered by Fed.R.Evid. 415, when putting this type of evidence through the Fed.R.Evid. 403 microscope, a court should pay "careful attention to both the significant probative value and the strong prejudicial qualities" of that evidence.** *See* <u>Guardia</u>, 135 F.3d at 1330. Hence, the **factors that the court should consider in deciding whether to admit this type of evidence should include the similarity of the prior acts to the acts charged,** *see* <u>United States v. Edwards</u>, 69 F.3d 419, 436 (10th Cir.1995) (engaging Fed.R.Evid. 403 analysis of evidence of prior bad acts admissible under Fed.R.Evid. 404(b)), the **closeness in time of the prior acts to the acts charged,** *see id.* **(same), the frequency of the prior acts, the presence or lack of intervening circumstances, and the necessity of that evidence beyond the testimonies already offered at trial,** *see* <u>Guardia</u>, 135 F.3d at 1331. In light of the sensitive nature of the evidence proffered, it is important that the district court fully evaluate the factors enumerated above, and **others that might arise on a case-by-case basis**, and make a clear record concerning its decision whether or not to admit such evidence. *See id.*

(**Emphasis** added).

Thus, Rule 413 contains three "threshold requirements" regarding prior sexual conduct to be admitted: (1) the defendant must be <u>accused</u> of an offense of sexual assault; (2) the court must find that the evidence offered is evidence of the defendant's commission of another offense of sexual assault and (3) the evidence must be relevant. <u>U.S. v. Guardia</u>, 135 F.3d 1326,1328 (10th Cir. 1998); <u>Johnson v. Elk Lake Sch. Dist.</u>, 283 F.3d 138, 152-153 (3d Cir. 2002); <u>Rudy-Glanzer,</u>

Jane Doe  v. Epstein, et al.
Page 22

supra. Further, to be admissible under Rule 415, the evidence must qualify as relevant under

Rules 401 and 402, and the probative value must outweigh the danger of unfair prejudice, as set

forth under Rule 403.  Doe v. Glazer, 232 F.3d 1258, 1266 (9th Cir. 2000). The Court should

also consider the proximity of the events detailed by the witnesses, which can only occur in a

mini trial.  Specifically, this Court should consider the similarity of the prior act charged; the

closeness in time of the prior act to the acts charged; the frequency of the prior acts; the presence

or lack of intervening events; and the necessity of the evidence "beyond the testimony already

offered at trial." Blind-Doan v. Sanders, 291 F.3d 1079, 1082 (9th Cir. 2002); see also Johnson v.

Elk Lake Sch. Dist., 283 F.3d at 152  (stating that while similar acts may be admissible under

Rule 415 "some limits... need to be placed on its admissibility in order to ensure that the plaintiff

may not 'parade past the jury a litany of potentially prejudicial similar acts that have been

established or connected to the defendant only, by unsubstantiated innuendo,'" (quoting

Huddleston v. U.S., 485 U.S. 681, 689 (1988)).

Under the Rule 415 analysis, JANE DOE may  introduce evidence of other females only

if (1) her claim for damages is predicated upon the offense of sexual assault, (2) EPSTEIN's

alleged encounter(s) with the "other females" constitute a "sexual assault," and (3) such evidence

is relevant.  As discussed above under the heading "Rules 401 and 402, Fed.R.Evid.(2010) –

Evidence which is not relevant is not admissible," evidence pertaining to the other females is not

relevant to any consequential fact in this action.  As stated previously, (other than LM and EW),

the other females have absolutely no personal knowledge regarding JANE DOE and her alleged

Jane Doe  v. Epstein, et al.
Page 23

encounters and how it affected her.[5]  Furthermore, as discussed *infra*, it is unclear whether or

which of the listed "similar fact" witnesses ever accused EPSTEIN of an offense of sexual

assault as required by Rules 415 and 413.

In the instant action, not only is the evidence Plaintiff is attempting to introduce not

relevant, but there also exist numerous dissimilarities among Plaintiff's allegations as to what

happened to her and that of the other females such that it does not constitute "similar fact"

evidence.  Some of the dissimilarities include but are not limited to:

- JANE DOE claims to have had numerous encounters with EPSTEIN; other females

  allege to have had only one encounter or less than JANE DOE; thus, the number of visits

  is not the same, and how many times a particular female returned is not the same.

- What allegedly took place during the encounter(s) with JANE DOE and other females is

  not the same; i.e., did a sexual assault as defined in Rules 415 and 413 even occur? Did

  the encounter involve only a massage or more?

- How each female learned of EPSTEIN or came to EPSTEIN's home differs.  (One thing

  is certain, there is no evidence that JANE DOE or any other female was forcibly taken to

  EPSTEIN's Palm Beach home or forced to return).  How a particular female learned of

  EPSTEIN and came to his Palm Beach home is unique to that particular female.

---

[5] Also regarding whether evidence is relevant, "[i]f the inference to be drawn from the evidence is the result of speculation or conjuncture [sic], the underlying evidence is not relevant." Judge Robert E. Jones, Judge Gerald E. Rosen, et al., "Federal Civil Trials and Evidence," (TRG 2007), Section 8:118 (hereinafter "Federal Civil Trials and Evidence"); Engstrand v. Pioneer Hi-Bred Int.'l, Inc., 946 F.Supp. 1390, 1396 (S.D. Ia. 1996), aff'd 112 F.3d 513 (8th Cir. 1997).  If the other females are allowed to testify, speculation and conjecture would surely result regarding evidence as to JANE DOE's claims.

Jane Doe  v. Epstein, et al.
Page 24

- The motivations and psychological reaction of each female in having encounter(s) with EPSTEIN is different (and each will involve substantial testimonies and records regarding each's motivation and psychological reactions).

Defendant requests that, should Plaintiff attempt to argue that such evidence is similar fact evidence, he first be allowed to examine such witnesses before the Court in order to show that the evidence pertaining to the other females does not meet the three step analysis under Rule 415. Many of the listed witnesses have not even been deposed. The specifics of what happened during the alleged encounter(s) are critical to determining whether a sexual assault event took place and what other dissimilarities exist. Significantly, whether or not the testimony of these listed witnesses is even reliable is a huge factor which Defendant is entitled to explore. See case law cited below herein.

Finally, if the Court were at some point to make a determination that certain of the evidence met the criteria under Rule 415, such evidence is still subject to a Rule 403 analysis. As discussed above, this is a case where it is not difficult to imagine how the jury's emotion could control the outcome of the case. Parading other females, and thus, having trials within trials, would clearly create the circumstances that Rule 403 is meant to prevent in order to ensure a fair trial. The outcome of this case, and the amount of compensatory and punitive damages, if any, should be based upon what JANE DOE claims happened to her, and what JANE DOE claims happened during her encounters with EPSTEIN, along with appropriate cross-examination of her, and presentation of witnesses who have personal knowledge as to her claims.

Supporting exclusion under a Rule 415 analysis, the Rudy-Glanzer Court excluded evidence of the defendant's alleged prior child molestation under Rule 403 because there was a

Jane Doe  v. Epstein, et al.
Page 25

remoteness in time of the alleged acts, a lack of similarities between the alleged acts, the witness

was unreliable, among other factors.  The Court determined that any probative value was

substantially outweighed by the danger of unfair prejudice.

In Martinez v. Cui, 2010 WL 2404930 (C.A.1 Mass. 2010), the court held that the district

court did not abuse its discretion in excluding testimony of another patient that claimed a

resident sexually assaulted her, and further recognized that the danger of unfair prejudice was

outweighed by any probative value.  Id. at *4 - *6.  In addition, the Martinez court found that the

alleged similar fact evidence would have required a mini-trial to probe the complexity of the

claim "including expert testimony, thereby finding that the alleged similar fact evidence…could

get lost in the details of the 'maxitrial' which would have been unduly prejudicial and likely to

confuse the jury."  Id. at *6; see also Seeley v. Chase, 443 F.3d 1290, 1296-1297 (10th Cir.

2006) (remanding case due to district court's failure to conduct an intensive Rule 403 analysis

(i.e. a mini-trial) of the proffered prior sexual assault evidence).

Finally, and also supporting the exclusion of such evidence, "a witness' credibility may

not be attacked through contradictory statements on a collateral matter."  Federal Civil Trials and

Evidence at Section 8:129. Impeachment by contradiction on a collateral matter is "irrelevant

and therefore inadmissible." Lear v. Cowan,  220 F.3d 825, 828 (7th Cir. 2000); Wilson v.

Muckala,  303  F.3d  1207,1216-1217(10th Cir. 2000)   (evidence of a defendant/witness'

extramarital affair is "wholly collateral" to his credibility in a sexual harassment lawsuit").

Evidence of a plaintiff's earlier claims or suits is generally inadmissible. Proof that a party is a

"chronic claimant" has slight probative value regarding the issue of defendant's liability on the

current claim. That value is outweighed by the danger of juror bias against the litigant. Federal

Jane Doe  v. Epstein, et al.
Page 26

Civil Trials and Evidence, Section 8:155; <u>Mathis v. Phillips Chevrolet, Inc.</u>, 269 F.3d 771, 775-

776 (7th Cir. 2001).  "Extrinsic evidence of specific instances of conduct is not admissible when

offered to support or attack a witness' character for truthfulness." Federal Civil Trials and

Evidence, Section 8:1210; <u>Becker v. ARCO Chem. Co.</u>, 207 F.3d 176, 204-205 (3rd Cir. 2000);

<u>United States v. McGee,</u> 408 F.3d 966, 981 (7th Cir. 2005).  Courts have discretion to permit or

prohibit inquiry on cross-examination about specific instances of conduct. Federal Civil Trials

and Evidence, Section 12:21; <u>F.R.E. 608(b)</u>.

## Conclusion

Accordingly, evidence as to other females (except for the limited testimony of LM and

EW as specified herein and in the related motion in limine filed simultaneously, has no relevance

in this matter, and is thus inadmissible under Rule 415 and required to be excluded.  In the

alternative, if the Court somehow finds such evidence to be relevant or similar, such evidence is

still required to be excluded as any probative value is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury, and by considerations of undue

delay, and waste of time.

WHEREFORE, Defendant respectfully requests that this Court grant his motion in limine.

## Local Rule 7.1 Statement

I hereby certify that counsel for the respective parties communicated in a good faith effort to

resolve the issues prior to the filing of this motion.   Plaintiff's counsel disagrees with

Defendant's position.

_/s/ Robert D. Critton, Jr._
Robert D. Critton, Jr.

Jane Doe  v. Epstein, et al.
Page 27

Attorney for Defendant Epstein

## Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was electronically filed with the

Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this

day on all counsel of record identified on the following service list in the manner specified via

transmission of Notices of Electronic Filing generated by CM/ECF on this _____ day of ___July_____,

2010:

Brad Edwards, Esq.
Farmer, Jaffe, Weissing, Edwards, Fistos
& Lehrman, PL
425 N. Andrews Ave.
Suite #2
Fort Lauderdale, FL 33301
Phone: 954-524-2820
Fax:  954-524-2822
Brad@pathtojustice.com

Paul G. Cassell, Esq.
*Pro Hac Vice*
332 South 1400 E, Room 101
Salt Lake City, UT 84112
801-585-5202
801-585-6833 Fax
cassellp@law.utah.edu
*Co-counsel for Plaintiff*

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
561-835-8691 Fax
jagesq@bellsouth.net
*Co-Counsel for Defendant Jeffrey Epstein*

Jane Doe  v. Epstein, et al.
Page 28

Respectfully submitted,

By: _/s/ Robert D. Critton, Jr._
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No.  224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296
mpike@bclclaw.com
BURMAN, CRITTON, LUTTIER & COLEMAN, LLP
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401
561/842-2820 Phone
561/253-0164 Fax
(Co-Counsel for Defendant Jeffrey Epstein)