Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-34791-BKC-RBR

In Re:
ROTHSTEIN ROSENFELDT ADLER, P.A.,
    Debtor.
_____/

MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM TRUSTEE PURSUANT TO DOCUMENT PRODUCTION PROTOCOL ESTABLISHED BY DE#672 (807); AMENDED MOTION FOR PROTECTIVE ORDER (819)

August 4, 2010

    The above-entitled cause came on for hearing before the HONORABLE RAYMOND B. RAY, one of the Judges of the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 299 East Broward Blvd, Fort Lauderdale, Broward County, Florida, on Tuesday, August 4, 2010, commencing at or about 9:30 a.m., and the following proceedings were had:
        Reported By: Margaret Franzen

Page 2

APPEARANCES:

BERGER SINGERMAN, by
CHARLES H. LICHTMAN, ESQUIRE
    on behalf of the Trustee

CONRAD & SCHERER, by
WILLIAM R. SCHERER, ESQUIRE
    on behalf of victims

FOWLER WHITE BURNETT, by
RONALD G. NEIWIRTH, ESQUIRE
LILLY ANN SANCHEZ, ATTORNEY-AT-LAW
CHRISTOPHER E. KNIGHT, ESQUIRE
JOSEPH L. ACKERMAN, ESQUIRE
    on behalf of Jeffrey Epstein

FARMER JAFFE WEISSING EDWARDS FISTOS & LEHRMAN, by
GARY FARMER, ESQUIRE
BRAD EDWARDS, ESQUIRE
    on behalf of LM, Brad Edwards and Farmer Jaffe Weissing Edwards Fistos & Lehrman

- - - - - - -

Page 3

 1    THE COURT: Rothstein Rosenfeldt & Adler.
 2 All right. May I have appearances, please?
 3    MR. LICHTMAN: Good morning, Judge.
 4 Chuck Lichtman, Berger Singerman, for the trustee.
 5    MR. NEIWIRTH: Good morning, your Honor.
 6 Ronald Neiwirth, Fowler White Burnett, on behalf of
 7 the movant, Epstein, and with me today are two of my
 8 partners, Chris Knight and Lilly Ann Sanchez --
 9    MS. SANCHEZ: Good morning, your Honor.
10    MR. KNIGHT: Good morning, your Honor.
11    MR. NEIWIRTH: -- both of whom are more
12 familiar with the State Court angle on this than I
13 am, so they came along to be able to elucidate that
14 end of it.
15    MR. FARMER: Good morning, your Honor.
16 Gary Farmer on behalf of LM, Brad Edwards, and
17 the Farmer Jaffe Weissing law firm. We are an
18 interested party and have filed a motion for
19 protective order as to the subpoena that is at
20 issue here today.
21    THE COURT: All right. Insofar as the
22 TD Bank motion, Docket Entry 780, that has been the
23 subject matter of an agreed order that was submitted
24 to me.
25    MR. LICHTMAN: Correct, Judge.

Page 4

 1    THE COURT: Mr. Scherer.
 2    MR. SCHERER: Yes, sir, your Honor.
 3 I'm William Scherer and I'm here on behalf of a
 4 number of victims in the State Court action, as
 5 well as the chairman of the creditors' committee
 6 in the bankruptcy.
 7    THE COURT: All right. That leaves us with
 8 Docket Entry 807 and 819. 807 is Jeffrey Epstein's
 9 motion.
10    MR. NEIWIRTH: Thank you, your Honor, and
11 again, good morning. We represent Jeffrey Epstein.
12 He has a civil claim pending in State Court in
13 Palm Beach County. He had served a subpoena on
14 Mr. Stettin requesting documents from the RRA estate.
15 That was back in April.
16    While this was still in process, in
17 May, under Docket Entry 672, your Honor entered
18 an order standardizing procedures for obtaining
19 discovery from Mr. Stettin and the RRA estate,
20 and at least on the face of it, it takes
21 jurisdiction over all discovery efforts against
22 the trustee. That left us in a quandary.
23    We had a subpoena pending in State
24 Court. We had correspondence from Berger
25 Singerman on behalf of the trustee that they had

1 (Pages 1 to 4)

OUELLETTE & MAULDIN COURT REPORTERS,
(305) 358-8875



Page 5

1  identified information and they were processing
2  it, including vetting for attorney/client
3  privilege issues, but then in the meantime came
4  your Honor's order on May 18th, so we had to go
5  back and reinvent the wheel and go through the
6  necessary hoops in order to comply with that.
7     In the meantime, as we sit here now, we
8  still have no production. We have a trial date
9  coming up in October, and we have a motion for
10 protective order coming from a party who's
11 already settled out, the LM party. They no
12 longer have anything directly to do with this.
13    Further, we are advised by the
14 creditors' committee that in addition to what was
15 proffered to us, that at some point in time there
16 had been something like ten boxes of records
17 pertaining to these particular issues and someone
18 on behalf of the victims had been given, or
19 several someones, had been given access to those
20 ten boxes and had viewed them, which would
21 vitiate any attorney/client privilege in any
22 event.
23    So what we are trying to do is fashion
24 a mechanism so we can comply with your order,
25 Docket 672, about standardized means of getting

Page 6

1  production from the trustee, allow for the
2  appropriate vetting of the materials for
3  attorney/client privilege, and we must bear in
4  mind that this is one objector, there's a lot
5  more documents than that.
6     To the best of our knowledge, the
7  documents that pertain to the LM party, who is
8  settled anyway, may be 15 percent of those which
9  are responsive to the inquiry that we made of the
10 trustee, but in any event, someone has to vet
11 them for attorney/client privilege and do a
12 privilege log.
13    Now, Mr. Farmer's office on behalf of
14 LM wants to do that. We don't think that's
15 appropriate. We think the privilege at this
16 point, since the case is settled, lies with RRA
17 and, therefore, the trustee, rather than
18 Mr. Farmer and his client, because as to them the
19 case is over.
20    Furthermore, we don't think there is
21 any privilege because the boxes have been vetted
22 before and we'll hear more about that from
23 Mr. Scherer, I assume, because he was the one
24 that was aware of that.
25    And last, but not least, your Honor has

Page 7

1  taken jurisdiction over these discovery matters
2  and attempted to standardize discovery efforts
3  for the trustee. There's a lot of people that
4  want things from the trustee.
5     The trustee is overseeing an estate
6  which involved somewhere in excess of 70 lawyers
7  and lots of cases and lots of problems, and
8  literally millions of documents, and we have
9  absolutely no problem with the standardized
10 order, but that means that somehow or other we
11 have to be able to deal with it in a standardized
12 manner, instead of Mr. Farmer's suggestion, which
13 is go back to State Court and deal with it over
14 there.
15    THE COURT: What is the status of the State
16 Court proceeding?
17    MR. NEIWIRTH: May I defer to my partner,
18 who is more familiar with that?
19    MR. KNIGHT: Your Honor, Christopher
20 Knight, if I may? While we were waiting for the
21 documents from the Stettin office, we obviously
22 wanted to go down two tracks because we had an
23 October trial date. The status of it is we could not
24 come to an agreement with the other side.
25 Mr. Ackerman was at the last hearing, in which the

Page 8

1  judge said, one, I need a representative of the
2  trustee here and two, shouldn't this be back before
3  you, Judge Ray.
4     THE COURT: You can't proceed against
5  Rothstein in the State Court, they're here.
6     MR. KNIGHT: And that is the same thing I
7  think Judge Crow recognized, and that's why we're
8  back here, and that's why we had to file the motion.
9     MR. ACKERMAN: The claim against
10 Rothstein is against him individually, and it's
11 against Brad Edwards individually, and it was
12 against one of the claimants, LM individually.
13    THE COURT: So it's not against the debtor
14 estate.
15    MR. ACKERMAN: That's correct.
16    MR. KNIGHT: Just to go a little further on
17 what Mr. Neiwirth was saying. Out of these documents
18 we've been asking for for a long time, very few of
19 them would even have privilege on their face because
20 they have nothing to do with the clients that were
21 represented, what's been called as LM.
22    If there's going to be a log, if
23 there's any need, which I don't think there is
24 because I think privilege has been waived, it
25 needs to be a log put together by the trustee,

Page 9

1  not anybody else that has some sort of interest
2  in it.
3       If there's a problem with payment for
4  those, et cetera, our client has already offered
5  to the trustee, to Mr. Lichtman, we will pay for
6  it, whether it's a special master or whether it's
7  a contract attorney, if they need to do that, but
8  I don't think we even need to reach that.
9       I think these documents are long
10 overdue. They have been produced to others, they
11 have been used in depositions for others, they
12 are out there, and I think the privilege issue is
13 just being used as a smoke screen to keep our
14 client from being able to get the documents he
15 needs to be able to prove his case.
16      Thank you.
17      MR. ACKERMAN: Your Honor, one other
18 matter. Judge Crow expressed a concern about
19 entering any order against the trustee or his
20 counsel without them being present.
21      Initially we had filed a motion to
22 compel in the State Court, but we didn't realize
23 at the time or it was unclear, because we had
24 just taken over the case from another law firm,
25 that the Court had entered its order.

Page 10

1       There was some discussion prior to the
2  hearing and when we went to the hearing, it was
3  clear that there was no agreement that had
4  existed and Judge Crow said, I'm not entering an
5  order, I'm not doing anything on this motion
6  until the bankruptcy trustee is represented.
7       He was concerned because this Court's
8  order had set up the standardized procedure for
9  dealing with these arguments and had reserved
10 jurisdiction relating to any subpoena or request
11 for documents from the trustee, so that's why
12 we're here now.
13      THE COURT: All right.
14      MR. KNIGHT: Your Honor, just one other
15 point. We tried to work, and we've been working with
16 Mr. Lichtman, tried to work out a protective order
17 between the trustee and Epstein regarding the
18 subpoena. Mr. Lichtman and Ms. Sanchez agreed to
19 language on it. I have a copy of it.
20      Mr. Farmer, with his motion for
21 protective order, would not agree to that, but if
22 the Court would like to have a copy of what the
23 draft was, I will approach your clerk, but if you
24 do not want that, I also ---
25      THE COURT: Well, let me hear from

Page 11

1  everybody first.
2       MR. KNIGHT: Okay.
3       MR. FARMER: Thank you, your Honor, may it
4  please the Court. Again, Gary Farmer on behalf of
5  the interested party, LM, also on behalf of
6  Brad Edwards and I'm sorry, your Honor, Mr. Edwards
7  is here with me. I neglected to introduce him to the
8  Court earlier.
9       MR. EDWARDS: Good morning, your Honor.
10      MR. FARMER: There has been a lot of
11 discussion here about your Honor's standardized
12 production order and I think that you need to
13 understand that this particular matter, which is
14 before you today, is anything but standard or common
15 to the matters before this Court.
16      You need to understand the nature of
17 the case. Jeffrey Epstein is an admitted
18 convicted pedophile. He sexually assaulted
19 dozens and dozens of young girls under the age of
20 15. He pled guilty to this and he has settled
21 every civil lawsuit filed against him on this
22 issue.
23      Despite all of this, Mr. Epstein has
24 seen fit to file a lawsuit against LM, who is one
25 of the plaintiffs against him; against

Page 12

1  Brad Edwards, LM's attorney; and against
2  Mr. Rothstein.
3       Now, Edwards, myself, and all the
4  members of our firm were RRA attorneys when
5  Mr. Rothstein took his ill-fated trip to Morocco
6  and did the things which are now so well known,
7  but the fact of the matter is that this discovery
8  request is a blatant attempt to obtain clearly
9  privileged documents related to the
10 representation of LM and many other victims, by
11 the way.
12      And if I can show your Honor a copy of
13 the subpoena itself, I don't think that the
14 breadth of the subpoena has been adequately
15 represented to the Court. If you peruse this,
16 you will see they are asking for communications
17 with private investigators, they're asking for
18 contingency fee contracts, they're asking for
19 every communication between any member of the
20 firm, and they throw Rothstein in just to make it
21 sexy, about these cases.
22      Now, your Honor, clearly communication
23 about the representation of a client falls under
24 not only the work product, but if the client is
25 involved in the communication, also the

3 (Pages 9 to 12)

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

Page 13

1  attorney/client privilege.
2      Now, most of this stuff we've already
3  responded and said none, none, none, but for many
4  of these items, we have asserted the privilege
5  and we continue to assert the privilege.
6      Now, the only reason the trustee is
7  here —
8      THE COURT: Wait, there's been a privilege
9  asserted in the State Court proceeding?
10     MR. FARMER: Yes, sir.
11     THE COURT: And there is a privilege log
12 and the judge has made a ruling?
13     MR. FARMER: No. The dispute now really is
14 over who's going to file the privilege log and
15 respectfully, Judge, what we suggest is that the
16 trustee has been thrust into this matter simply
17 because the trustee stands in the shoes of all the
18 former attorneys at RRA, and the trustee is likewise
19 bound by the privileges that attach to the cases and
20 to the lawyers that were at the firm.
21     The trustee has repeatedly acknowledged
22 the fact that it is bound by those privileges
23 and, of course, as your Honor knows, the
24 privilege belongs to the client, not to any
25 lawyer or any law firm.

Page 14

1      So the trustee is really kind of stuck
2  in the middle here. You've got the pedophile who
3  wants documents related to the cases he's already
4  settled and pled guilty for. Those documents,
5  the electronic documents, at least, the e-mails,
6  electronically stored information is how it's
7  referred to in the discovery request, your Honor,
8  are not in our possession, they are in the
9  possession of the trustee because the trustee
10 took the computer system.
11     So the trustee doesn't want to incur
12 the cost and expense of filing a privilege log
13 and, frankly, I don't know that the trustee has a
14 full appreciation of the nature and specific
15 facts of the cases that would enable it to
16 conduct a complete privilege log.
17     So my suggestion, your Honor, and it's
18 been rejected — I believe it's acceptable to the
19 trustee, but it's been rejected by Mr. Epstein's
20 counsel, is the trustee be removed from this
21 equation. There's no need that we come back
22 before you.
23     This case, this Epstein case, is not a
24 matter which would involve bankruptcy estate
25 assets going to Mr. Epstein. Unlike

Page 15

1  Mr. Scherer's clients, who have claims before
2  this Court, and hopefully they will get some form
3  of relief from the Bankruptcy Court, Epstein is
4  not seeking any bankruptcy assets. He's suing
5  Brad Edwards and LM personally, and Scott
6  Rothstein, and it's not an estate claim, it's
7  against Scott Rothstein personally.
8      So my suggestion, your Honor, is that
9  you instruct the trustee to turn this electronic
10 documentation information over to us. We will
11 file the appropriate privilege log with the
12 Circuit Court judge who is presiding over the
13 case, who is most familiar with the case, who
14 will be considering the upcoming motion for
15 summary judgment, and possibly trying the case,
16 and that way your Honor is not burdened with this
17 matter, the trustee does not incur fees and
18 expenses of having to go through all of these
19 documents, prepare a privilege log and our
20 clients and Mr. Edwards — Mr. Edwards is also a
21 party of that lawsuit. He enjoys his own
22 privilege, your Honor, over and above, or in
23 addition to, I should say, the privilege
24 possessed by our former clients and, of course, I
25 know counsel knows that the privilege extends

Page 16

1  beyond the litigation.
2      So although Mr. Epstein paid a ton of
3  money for this claim that is supposedly
4  frivolous, it has been settled, but the privilege
5  still extends and it remains in place. So we
6  simply want to make sure that our investigative
7  materials, our reports, other documentation
8  relating to the claims we have and have had
9  against Jeffrey Epstein are not put into the
10 hands of Jeffrey Epstein's attorneys.
11     Now, we just want the chance to review
12 these documents and prepare the privilege log and
13 the trustee is kind of stuck in the middle here,
14 Judge. Remove the trustee from the equation, let
15 us get the documents, we'll file the privilege
16 log, and then Mr. Epstein and us can go before
17 Judge Crow. He can review the privilege log,
18 review the documents in camera.
19     All that is going to be pretty time
20 consuming, but he's much more suited, a better
21 suited judge because he's more familiar with the
22 facts to engage in that inquiry.
23     THE COURT: Thank you.
24     MR. FARMER: Thank you, your Honor.
25     THE COURT: Mr. Lichtman, Mr. Scherer, your

4 (Pages 13 to 16)

Page 17

1  input, please.
2         MR. LICHTMAN: I'm going to let Mr. Scherer
3  go first.
4         MR. SCHERER: I think he wants me to go
5  first.
6         THE COURT: All right.
7         MR. SCHERER: Your Honor, in November
8  we filed a lawsuit in State Court and we alleged
9  that as a part of Mr. Rothstein and the firm, and
10 the firm's employees, and maybe some of the
11 firm's attorneys, conspired to use the Epstein/LM
12 litigation in order to lure $13.5 million worth
13 of my victims, my clients, into making
14 investments in these phoney settlements.
15        And as we alleged in that State Court
16 proceeding, and we've sharpened the allegations
17 as we've amended a few times, we allege that
18 sometime in late October, that my clients were
19 invited into the Rothstein firm with
20 Mr. Rothstein, and he explained that he had a
21 litigation going in State Court with Mr. Edwards
22 representing LM, a victim of Mr. Epstein, and
23 these are kind of sensational allegations and
24 it's been printed widely.
25        And my clients, a number of them and

Page 18

1  their lawyer, went into the Rothstein conference
2  room and Mr. Rothstein brought down -- summoned
3  the investigators, two of them, two or three of
4  them, to bring down the Epstein file. And the
5  lawyer that my clients brought from a national
6  firm, went through the LM boxes, ten of them that
7  the investigators brought down, and concluded
8  that the Epstein case was a real case.
9         And what Mr. Rothstein did with that
10 real case, of course, is he told everybody that
11 not only did he have the LM client of
12 Mr. Edwards, that there were a number of other
13 young ladies, that was widely published in the
14 newspaper, that the firm was representing and
15 that wanted to settle with Mr. Epstein on a
16 confidential basis.
17        So he used the real case in order to
18 defraud my clients into investing into these
19 phoney settlements and paid 13 and a half million
20 dollars. I believe that Mr. Rothstein and others
21 in the firm also told that story to a lot of
22 other people, and let a lot of other people
23 examine those ten boxes of the real case.
24        In addition, as we have alleged, that
25 Mr. Edwards and the firm put sensational

Page 19

1  allegations in the LM case that they knew were
2  not true, in order to entice my clients into
3  believing that Bill Clinton was on the airplane
4  with Mr. Epstein and these young woman and other
5  personages, I can't remember who they are, and
6  all sorts of other allegations that really were
7  not even related to the LM case.
8         And to the extent that any lawyers from
9  the RRA firm, former lawyers, made a ton of money
10 or however Mr. Farmer talked about it, we're
11 interested in that ton of money because if they
12 were involved in this scheme, this fraud, there's
13 a crime fraud exception, and in addition, I want
14 to see the ten boxes that they brought down.
15        The trustee does not have those ten
16 boxes. Those ten boxes were taken by Mr. Edwards
17 when he left the law firm, I presume. So we want
18 the ten boxes, we want all the communications and
19 we want to look through everything on behalf of
20 my State Court case, but also on behalf of the
21 creditors' committee because the creditors'
22 committee is looking to see if anybody else in
23 the firm, other than Rothstein, was involved in
24 this massive fraud that used the Epstein case.
25        The model of using an existing case and

Page 20

1  then spinning off a fraud from it is the same
2  that was perpetrated on the Morse -- in the Morse
3  situation, as has been alleged and widely
4  produced.
5         I can't conceive that Mr. Edwards and
6  the predecessor law firm would have any standing
7  to prepare privilege logs or anything else, given
8  what I just told the Court. That would be like
9  having the fox guard the hen house. That Epstein
10 case is settled, and to the extent it's the ten
11 boxes of stuff that we looked through, and I'll
12 have to get the boxes to see if the attorney who
13 looked through them, and how much time he spent
14 looking through them ---
15        THE COURT: Where are the ten boxes?
16        MR. SCHERER: That's a good question.
17 The trustee does not have the ten boxes. I
18 presume the ten boxes are residing with the
19 lawyers who took the case, Mr. Edwards and the
20 successor law firm. The trustee does not have
21 them. And then in addition, there's about 6,000
22 e-mails that the trustee has, and I bet you when
23 we look at Qtask, there's going to be a boatload
24 more.
25        My clients were also advised during

Page 21

1  their due diligence, short due diligence to
2  settle these cases with these young ladies --
3  these putative young ladies who had to get the
4  money and leave town because of whatever the
5  stories were, that there were other members of
6  the firm that told my clients that they, indeed,
7  had even identified more of these victims that
8  Mr. Rothstein didn't even know about at that
9  time. So we know it wasn't just Mr. Rothstein
10 spinning the tale, there were a lot of people in
11 the firm.
12     We've alleged almost all of this in our
13 State Court action that we filed in November, up
14 to where we are right now, but, your Honor, I
15 think your Honor is going to have to deal with
16 these issues in this court and I would urge you
17 to have the trustee get involved and let the
18 trustee do its job with respect to whether there
19 are privileges that need to be protected, work
20 product or attorney/client privileges, given
21 what's going on, and I believe the trustee will
22 be investigating whether the trustee wants to
23 bring any claims on behalf of the estate by
24 virtue of what I've just laid out for you.
25     Thank you.

Page 22

1     THE COURT: So your lawsuit in State Court
2  names these people as defendants?
3     MR. SCHERER: It names Rothstein. It
4  does not name Mr. Edwards. It just names
5  Rothstein, not the firm, and lays out the facts
6  and says other people in the firm. We did not
7  name them because we want to see the documents
8  and see whether they had involvement.
9     But the facts that I have alleged for
10 you, your Honor, is pretty much what I've alleged
11 in my first through third amended complaint in
12 State Court.
13    THE COURT: So, in essence, your position
14 in this matter would be to support the motion to
15 compel and deny the motion for protective order?
16    MR. SCHERER: Yes, sir, notwithstanding
17 that Mr. Epstein is a convicted pedophile. I
18 want to put that on the record. You know, he's
19 served his time and whatever, but I support the
20 same position that he -- that he has asked the
21 Court, and that is to have the trustee deal with
22 this, get these documents and deal with it with
23 you, rather than allow the successor law firm to
24 have them.
25    I don't know where they had the right

Page 23

1  to take those ten boxes to start with.
2     THE COURT: All right. Mr. Lichtman.
3     MR. LICHTMAN: Good morning, Judge. I'm
4  going to try to walk you through sort of
5  chronologically the trustee's perspective of what has
6  happened here. I think that what I've heard from all
7  the parties are comments that are correct, and not
8  necessarily correct, and I'm not suggesting
9  falsehoods. We just have kind of a different
10 perspective of some things and there are some points
11 that ought to be corrected.
12    Mr. Stettin received a subpoena in a
13 Palm Beach State Court action for production of
14 documents, and as we had done in virtually every
15 subpoena, we went to our forensic accountants,
16 the Berkowitz Dick Pollack & Brant firm, and
17 said, okay, we need to produce e-mails and we
18 need to also then, with the staff that we have at
19 Berger Singerman and elsewhere, and look to see
20 if there are any hard documents that we can find,
21 notwithstanding what we'll call the issues as to
22 the RRA hard drive that contain client files.
23    We quickly realized that this is a
24 claim different than all of the other subpoenas.
25 The subpoenas that we had been receiving from

Page 24

1  virtually every other party in the case were
2  requests for production of documents related to
3  claims that those moving parties or requesting
4  parties would have as it pertains to them trying
5  to recover some aspect of money as pertained to
6  the Ponzi scheme.
7     Okay. Like Mr. Scherer, who said I
8  need a bunch of documents, can you help us? So
9  we would enter into, on a one by one basis, a
10 protective order that was very, very tightly
11 negotiated. There is no standard form protective
12 order in this case, contrary to what everybody
13 has told you. We have a form that we use, and
14 everybody that has come to us, we said, we need
15 to have a protective order in place ---
16    THE COURT: We have Docket Entry 672, which
17 apparently is the document production protocol.
18    MR. LICHTMAN: We have that, yes, but then
19 we also, as an example, Document 685, have a
20 protective order that was entered with Mr. Scherer's
21 clients. We have, as an example, Document 715 that
22 pertains to MS Capital, and on and on.
23    So, in any event, what we realized is
24 the case with respect to the Epstein vs. Scott
25 Rothstein, Bradley Edwards case, is this is

6 (Pages 21 to 24)

Page 25

1  different. This is not an asset either to the
2  RRA estate, nor is it really an asset to any
3  potential creditor of the RRA estate that is
4  investigating claims that can bring a recovery
5  that can help in terms of the overall dollars
6  into either RRA or to a particular creditor on
7  their individual lawsuits.
8      The Epstein case, rather, is a lawsuit
9  between a third party that was being sued by the
10 Rothstein firm against Rothstein lawyers, and we
11 had a different privilege issue than we had
12 focused on with all these other document
13 productions.
14     So we get the 6,000 e-mails, and on the
15 eve of one of my colleagues getting ready to
16 enter into -- either enter into one of these
17 protective orders or say, here, take them, like
18 we've done with everybody else, we looked up and
19 Mr. Stettin and I said, time out. We have a
20 legitimate privilege issue here.
21     And I want to be clear, we don't want
22 to come anywhere close to stepping in the mess of
23 waiving attorney/client privilege, unless and
24 until the Court tells us to, and I want to also
25 be clear, we wish we weren't here. We would

Page 26

1  prefer not to have a fight on any of this stuff
2  and on one hand, we don't care who does the
3  privilege log and who gets the documents, and on
4  the other hand, because of some things that
5  Mr. Scherer just commented on, that I learned
6  literally today, and because of the common
7  interest agreement that everybody knows we have
8  with Mr. Scherer and the committee, in some
9  respects, I don't think it prudent for me to
10 discuss why I would want to look at some of those
11 documents.
12     But be that as it may, we found that
13 there were 6,000 e-mails and this was the one
14 time that rather than go through the usual
15 protocol of preparing the stipulated protective
16 order that is effectively a mirror image of that
17 which is provided by Federal Rule of Evidence
18 502, we said there is a need for a real privilege
19 log here.
20     There are 6,000 e-mails, give or take,
21 and we quickly assessed that the time to review
22 6,000 e-mails, this could not be done by a
23 paralegal, it would have to be done by a lawyer.
24     THE COURT: Does this include Qtask or is
25 this in addition to?

Page 27

1      MR. LICHTMAN: Qtask is not part of this
2  equation as of right now. Now, it may be, and we're
3  still trying to get that. I'm just talking about
4  internal e-mails where we would put in a name search,
5  give it to the Berkowitz firm and say, run an e-mail
6  search on the following names.
7      And when we realized the volume of
8  work, and you can imagine, you know, like from a
9  ream of paper, 500 sheets of paper, and you
10 multiply that out and you get to 12 reams of that
11 paper, it takes up a lot of paper, it takes up a
12 tremendous amount of time. This is not an asset
13 of the estate that we can, if we have to, warrant
14 doing the work, the hard work, as we've done on
15 many of the other claims, some of which already
16 are before you for settlement purposes. This is
17 a liability to the estate and an expensive one.
18     So we really didn't want to go through
19 the undertaking of having to protect the
20 privilege, though we would, and candidly,
21 Epstein's counsel has said we'll pay you to do
22 it, but then there's also the manpower issue
23 because we are pressed very hard to get certain
24 adversaries moving as quickly as we can and we're
25 fighting a lot of battles on a lot of different

Page 28

1  grounds, we still really don't want to do that,
2  and also because we don't know the Epstein case
3  well enough to be able to assess what is
4  privileged, what is not, and preparing a
5  privilege log the proper way is really a time
6  consuming mess.
7      So I teed it up for both sides and
8  said, here's what I'm willing to do. Putting
9  aside the issue as to really whether or not the
10 Court does have jurisdiction on a State Court
11 subpoena, which ultimately I leave to you, we
12 said, we're still willing to enter into a
13 modified version of the protective order that we
14 gave to you, which effectively provides the
15 additional language of no claims can be brought
16 against Mr. Stettin or the estate if we produce
17 these documents.
18     We don't really have a bone to pick in
19 this mess, we just want to make sure that we
20 follow all of the ethical boundaries required by
21 Florida law, by rules of professional conduct.
22 We don't wish to necessarily waive somebody
23 else's privilege. We don't think that's
24 necessarily prudent, but we really don't want to
25 have a fight in this battle, and we wanted the

7 (Pages 25 to 28)

Page 29

1  Court to approve -- whatever it is you want us to
2  do, to tell you the truth, we're happy to do. We
3  just want to make sure that Mr. Stettin is
4  personally insulated and that the estate is
5  insulated in whatever it is --
6       THE COURT: All I see is --
7       MR. LICHTMAN: -- you direct.
8       THE COURT: -- the potential of a claim
9  against Stettin and the estate for breach of the
10 attorney/client privilege.
11      MR. LICHTMAN: correct.
12      THE COURT: So the basis --
13      MR. LICHTMAN: And hence the dilemma.
14      THE COURT: -- for the claim is there.
15      MR. LICHTMAN: Yeah, right, hence the
16 dilemma.
17      Now we come to the issue of hard
18 documents because the e-mails are one thing, and
19 I had a number of conversations candidly with
20 Ms. Sanchez, where I think that we had told her
21 originally we had heard there were, as an
22 example, some loan files or transaction files
23 related to Ponzi deals related to Mr. Epstein,
24 because I remember myself even hearing that going
25 back many, many, many months ago.

Page 30

1       Suffice it to say, that I have
2  conducted a very thorough discussion, without
3  waiving our internal privileges or work product,
4  and we can't find those, and it appears as if
5  they really did not exist, that what had occurred
6  is that somehow Epstein was listed on a sheet for
7  a potential deal that never closed.
8       In terms of the ten boxes of documents,
9  one of the functions the trustee served early on
10 in the case was to facilitate transfers of
11 files --
12      THE COURT: I remember that.
13      MR. LICHTMAN: -- from two attorneys that
14 were handling cases. All right. I had a general
15 understanding that most of the files were picked up
16 by the Farmer firm because they were continuing on
17 with that litigation, and that would have made some
18 sense, but then we had also heard that there were
19 some boxes that were left behind.
20      I believe there are two boxes, I'm not
21 positive of that, two boxes I think that we may
22 still have, and I'm pretty sure we've sent
23 e-mails a couple of times to the Farmer firm
24 saying, come get your documents.
25      Now, why would we do that? A, because

Page 31

1  they had been counsel for LM and others in
2  litigation respecting Epstein, and that we
3  assumed that they would have been files they
4  would want; and B, because at the time that this
5  matter on the subpoena came before the State
6  Court judge, we stood outside the courtroom and
7  here's what happened. I was effectively going to
8  tell the State Court judge basically the same
9  story I've told you in complete detail and say,
10 we don't really care. We just want to make sure
11 Mr. Stettin is protected and the estate is
12 protected.
13      And we had reached an agreement that
14 day, which was we were going to turn over the
15 boxes to Mr. Farmer's firm and we were going to
16 give e-mails to them, and they were going to do
17 the privilege log because that would save us a
18 ton of time, important time, and as important, a
19 lot of money to the estate, and we did not wish
20 to burden the creditors of the estate with legal
21 fees for putting together the privilege log, so
22 it was agreed that we would do that.
23      I, personally, reiterated the terms to
24 all the lawyers that were standing outside the
25 courtroom, as to what was to be reflected in a

Page 32

1  written order because I didn't want to leave it
2  to chance as to what was agreed on.
3       Suffice it to say, when the lawyers for
4  Mr. Epstein and the lawyers for Mr. Edwards went
5  back to try to reduce to writing that which was
6  in part agreed upon outside the courtroom, they
7  were unable to do so, and that teed up the filing
8  of the motion before you to compel us to produce
9  the e-mails and the documents.
10      I wish to reiterate, I think that
11 Mr. Scherer has shared something with me that we
12 need to investigate and will, and I was unaware
13 of that literally until I rode up the elevator
14 with him this morning. And I don't wish to spend
15 more time on it than that right now, but I take
16 him at his word because an awful lot of what I've
17 seen him work on so far has borne fruit.
18      I don't care what you want us to do.
19 All I want to know is that at the end I can walk
20 out of court with an order that protects the
21 estate and protects Mr. Stettin. So I have told
22 you the story and leave it to you to fashion what
23 remedy you think appropriate.
24      If I can answer any questions, I'm
25 happy to.

## Page 33

1  THE COURT: Well, the trustee knows what
2  the trustee has, obviously.
3  MR. LICHTMAN: Yes.
4  THE COURT: So the trustee is capable of
5  preparing a log of what he has.
6  MR. LICHTMAN: Meaning we have the
7  following data.
8  THE COURT: Yes.
9  MR. LICHTMAN: Yes, we can do that.
10  THE COURT: Then the parties can then argue
11  whether or not that is subject to privilege. The
12  plaintiff can still get from Mr. Farmer and his
13  clients in the State Court discovery. The discovery
14  being sought here is from the trustee --
15  MR. LICHTMAN: Correct.
16  THE COURT: -- and would be subject to the
17  trustee's responsibility for the privilege log
18  because of his potential liability.
19  MR. LICHTMAN: Yes, and I think you
20  understand, though, why if we can somehow deflect
21  that responsibility, because of the extreme amount of
22  cost and time to do that, we would be happy to do
23  that because, you know, otherwise, we submit fee
24  petitions that show a tremendous amount of time on
25  something that doesn't produce an asset to the

## Page 34

1  estate, just a liability.
2  THE COURT: Right. This is not an asset of
3  the estate.
4  MR. LICHTMAN: No, it's just a liability.
5  THE COURT: But could be a substantial
6  liability.
7  MR. LICHTMAN: Hence the dilemma.
8  THE COURT: Well, I can appoint a special
9  master to do it at the expense of the movant and not
10  release the information until the special master
11  reports back to me and I authorize the release.
12  What I propose to do by my authorizing
13  the release -- I'm sorry, Stettin, as trustee, to
14  release the information, I would, therefore, be
15  protecting the estate from any claims for the
16  release of that information.
17  MR. LICHTMAN: We would be happy to do
18  that, your Honor, and I note, I don't wish to speak
19  for the Epstein lawyers, they actually offered to pay
20  time for us doing that, and I said, well, you know,
21  that's part of the equation, the other part is ---
22  THE COURT: No, no, no, I can appoint a
23  special master.
24  MR. LICHTMAN: Yes.
25  THE COURT: All right. Mr. Farmer.

## Page 35

1  MR. FARMER: Yes, your Honor. Just very
2  briefly. I thank you for the opportunity to address
3  the Court again. I just wanted to clear something
4  up, your Honor. Understand that when this all
5  happened, there were six of us now who are partners,
6  who had dozens and dozens of on-going cases.
7  THE COURT: I remember we held hearings and
8  I authorized the trustee --
9  MR. FARMER: And you authorized, yes.
10  THE COURT: -- to deliver the information
11  so the lawyers could continue to represent the
12  clients.
13  MR. FARMER: It just seemed to be maybe
14  suggested here today that something untoward occurred
15  as far as the removal of these boxes. These were
16  litigation files, pleadings, investigative reports,
17  all of these things.
18  So we needed to get on with those
19  cases, but I think you've heard now from the
20  trustee that this is not an asset and it is an
21  expense. I still think that we are the party who
22  should prepare this privilege log. We are most
23  familiar ---
24  THE COURT: Well, no, if I appoint a
25  special master, you will have an input into that

## Page 36

1  special master and you'll have an opportunity to be
2  heard before me before I authorize the release of the
3  information, because ultimately the order that's
4  going to authorize the release of the information is
5  going to provide protection to the trustee and the
6  estate.
7  MR. FARMER: And, thank you, Judge, I just
8  wanted to make sure, and I was going to request, that
9  we have an opportunity to review whatever the master
10  does and if we think they've missed a privilege or
11  are wrong in an assertion, that we have an
12  opportunity to address that.
13  THE COURT: There is going to be a hearing
14  before the information gets released.
15  MR. FARMER: Understood. Thank you, your
16  Honor.
17  THE COURT: All right. Mr. Lichtman --
18  MR. LICHTMAN: Yes.
19  THE COURT: -- I want you to prepare the
20  order. I'm going to continue the hearing on the two
21  motions, Docket Entry 807 and 819, and I'm going to
22  have you draft an order appointing a special master,
23  the expense of which will be borne by the Epstein
24  movants. The special master will meet with both
25  sides, Epstein and Edwards, and then with the

Page 37

1 trustee, and will prepare a privilege log, the
2 release of which will be noticed for hearing in front
3 of me.
4     MR. LICHTMAN: Do I pick the special master
5 or do you?
6     THE COURT: You can -- if you all can -- I
7 hate to use the word agree, but if you all can agree,
8 that's fine. If you can't agree, give me three names
9 to choose from.
10     MR. LICHTMAN: Okay.
11     THE COURT: You're going to have to check
12 with this, quote, "special master" to make sure they
13 have the time to review the privilege log.
14     MR. LICHTMAN: The documents.
15     THE COURT: And it has to be somebody that
16 doesn't have a conflict of interest.
17     MR. LICHTMAN: Right. Okay.
18     THE COURT: All right. Run the order by
19 Mr. Neiwirth and Mr. Farmer.
20     MR. LICHTMAN: Thank you.
21     MR. FARMER: Thank you, your Honor.
22     MR. NEIWIRTH: Your Honor, may it please
23 the Court?
24     THE COURT: Yes.
25     MR. NEIWIRTH: Can we say something about

Page 38

1 the time frame because as we sit here right now we
2 still have a trial coming in October.
3     THE COURT: Well, I understand that, but I
4 probably have between five and 6,000 active cases
5 right now and within the Rothstein case, I don't even
6 know how many adversaries and contested matters are
7 pending. I'll get to it as soon as I can.
8     But you can proceed to obtain the
9 information from Edwards and LM in the State
10 Court proceeding. All I'm governing is what the
11 trustee is going to release from the debtor
12 estate.
13     All right. Mr. Lichtman, see to the
14 order.
15     MR. EDWARDS: Thank you, your Honor.
16     MR. FARMER: Thank you for your time, your
17 Honor.
18     MR. NEIWIRTH: Thank you, Judge.
19     (Thereupon, the hearing was concluded.)
20
21
22
23
24
25

Page 39

1
2
3     CERTIFICATION
4
5 STATE OF FLORIDA:
6 COUNTY OF DADE:
7
8     I, Margaret Franzen, Shorthand Reporter
9 and Notary Public in and for the State of Florida
10 at Large, do hereby certify that the foregoing
11 proceedings were taken before me at the date and
12 place as stated in the caption hereto on Page 1;
13 that the foregoing computer-aided transcription is
14 a true record of my stenographic notes taken at said
15 proceedings.
16     WITNESS my hand this 5th day of
17 August, 2010.
18
19
20     _____
       Margaret Franzen
21     Court Reporter and Notary Public
       in and for the State of Florida at Large
22     My Commission Expires: April 14, 2014
23
24
25

10 (Pages 37 to 39)

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875