FILED by _____ D.C.

DEC 27 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JANE DOE,                     **CASE NO.  08-CV-80893-CIV-MARRA/JOHNSON**

     Plaintiff,

vs.

JEFFREY EPSTEIN, et al.

     Defendant.

_____/

Related Cases:
08-80119, 08-80232, 08-80380, 08-80381,
08-80994, 08-80811, 08-80893, 09-80469,
09-80591, 09-80656, 09-80802, 09-81092

_____/

**PLAINTIFF JANE DOE'S EMERGENCY MOTION FOR A HEARING, FINDING THAT
EPSTEIN IS IN CIVIL CONTEMPT OF THE COURT'S TWO ORDERS FORBIDDING
HARASSMENT AND INDIRECT CONTACT, FOR APPROPRIATE SANCTIONS AND
ADDITIONAL REMEDIES INCLUDING REFERRAL FOR CRIMINAL CONTEMPT**

     Plaintiff, Jane Doe, through undersigned counsel, hereby files this emergency

motion for a hearing and for an immediate finding that Epstein stands in civil contempt

of Judge Marra's order forbidding indirect contact with Jane Doe and Judge Palermo's

order forbidding harassment of Jane Doe.  Jane Doe asks for this Court for remedies

and sanctions to provide for her safety and to insure that Epstein follows this Court's

orders (and an order of the state court), including a referral to the U.S. Attorney's Office

for prosecution of criminal contempt.

     To put the matter bluntly, defendant Epstein is intimidating Jane Doe in violation

of three judicial no-contact orders.  Last evening, he had a "private investigator" tail

Jane Doe – following her every move, stopping when she stopped, driving when she drove, refusing to pass when she pulled over.  When Jane Doe ultimately drove to her home, the "private investigator" then parked in his car approximately 25 feet from Jane Doe's house and flashed his high beam lights intermittently into the home.  Even more threateningly, at about 10:30 p.m., when Jane Doe fled her home in the company of retired police officer employed by Jane Doe's counsel, the "private investigator" attempted to follow Jane Doe despite a request not to do so.  The retired officer was successfully able to take evasive action and has placed Jane Doe in a secure, undisclosed location last night.  Other harassing actions against Jane Doe also occurred yesterday.

Given the circumstances of this case, it is obvious that intimidation from the "private investigator" was instigated by billionaire Epstein.  Epstein thus stands in clear violation of two, separate orders from this Court, one long-standing and one entered yesterday.  First, a year ago, this Court stated that it "finds it necessary to state clearly that Defendant is under this court's order not to have direct *or indirect contact* with any plaintiffs . . . ." Order, Case no. 9:08-cv-80119, doc. #238 at 4-5 (emphasis added).  Second, on top of this order, yesterday this Court entered another order directing Jane Doe and Epstein "not to communicate, speak or harass one another *in any way*." Order, Case no. 9:08-cv-80893, doc. #193 at 2 (emphasis added).

Epstein's intimidation-by-surrogate also violates a no-contact order entered during the course of his guilty pleas on June 30, 2008, before Palm Beach Circuit Court Judge Deborah Dale Pucillo, who ordered Epstein "not to have any contact, direct or

indirect" with any victims. She also expressly stated that her no-contact order applied to "all of the victims."

To protect her safety and to insure respect for court orders, Jane's Doe's counsel accordingly request, on an emergency basis:

First, the Court should schedule an emergency hearing today, either in court or via telephone, to consider whether Epstein stands in civil contempt of the Court's orders;

Second, the Court should find that Epstein stands in civil contempt of two separate orders of this Court;

Third, the Court should then hear from Jane Doe directly and impose such civil contempt sanctions as it finds will enable Jane Doe to return safely to her home or other place of safety without facing the threat of any further harassment or intimidation.

Fourth, as part of the sanction for Epstein's civil contempt, the Court should expand its current protective order to forbid Epstein or his agents from having any contact whatsoever, direct or indirect, with Jane Doe, but also with any of her family members or friends, as well as with any persons who have been identified by Jane Doe as possible witnesses in her case, without first seeking specific approval of the Court.

Fifth, the Court should direct Epstein's legal counsel to file with the Court in advance of the mediation on Tuesday morning a certification that they have explained to him the consequences of any additional violations of the courts orders.

Sixth, Epstein should be directed not to have any agents attempt to follow or surveil Jane Doe as she leaves the courthouse after the settlement conference on Tuesday or after any other court hearing;

Seventh, this Court should initiate criminal contempt sanctions against Epstein for the violations of its two orders under Fed. R. Crim. P. 42(a), by referring a criminal contempt action to the U.S. Attorney's Office for the Southern District of Florida;

Eighth, the Court should also refer this matter to the U.S. Attorney's Office for the Southern District of Florida for investigation of possible criminal offenses, including witness tampering in violation of 18 U.S.C. § 1512(b) as well as its position on violations of the conditions of Epstein's non-prosecution agreement; and

Ninth, the Court should refer this matter to Palm Beach Circuit Court Judge Deborah Dale Pucillo's criminal division presiding over Epstein's probation for consideration by her of whether Epstein has violated her order as well.

Tenth, the Court should refer this matter to Epstein's probation officer for determination of any violations of his probation.

Eleventh, the Court should request that Epstein pay a fine to Jane Doe's counsel in the amount of $18,000 to cover any and all costs associated with relocating Jane Doe and keeping her safe through her trial date.

Because Epstein's blatant defiance of this Court no-harassment order appears to be designed by him to intimidate not only Jane Doe but also other witnesses in the case (i.e., other young girls that he sexually abused), Jane Doe is filing this Emergency Motion Under Seal.

## BACKGROUND

Counsel for Jane Doe proffer the following facts as officers of the Court. They proffer that they could prove these facts at any evidentiary hearing which the Court might decide to hold. Counsel for Jane Doe further represent to this Court that they have a genuine concern about the physical safety of their client.

### Facts Leading Up to the Entry of Three Protective Orders

The Court is familiar with the general circumstances of this case, which involves Jane Doe's lawsuit seeking significant compensatory and punitive damages from billionaire Jeffrey Epstein. The Court is also aware that Epstein has pled guilty to state sex charges on June 30, 2008.

When he pled guilty before Palm Beach Circuit Court Judge Deborah Dale Pucillo, she ordered Epstein "not to have any contact, direct or indirect" with any victims. She also expressly stated that her no-contact order applied to "all of the victims." The relevant transcripts have been filed with this Court. (*See* case no. 9:08-cv-80119-KAM, doc. #113 at 3 and exhibits thereto.)

To avoid any uncertainty about the scope of this state court order, several of the plaintiff/victims with suits pending against Epstein before this Court filed a motion for an order prohibiting defendant or his agents from communicating with them directly or indirectly. (Case No. 9:08-cv-80119, doc. #113.) Epstein opposed these requests as "needless, unwarranted and excessive." Doc. #127 at 5. This Court, however, firmly overruled Epstein's objections. On July 31, 2009, this Court entered its own no-contact order (in addition to the state court order), ruling:

In light of Defendant's response to Plaintiff's motion for no contact order, suggesting that the state court's order only applies to some victims and that parties are always allowed to contact each other directly, the Court finds it necessary to state clearly that *Defendant is under this court's order not to have direct or indirect contact with any plaintiffs*, regardless of the intended scope of the state court court's order.

Order, Doc. #238, at 4-5 (emphasis added).

Recently, with the case nearing trial, the Court ordered Jane Doe to attend a settlement conference on July 6, 2010. Jane Doe had concerns that the upcoming settlement conference, demanded by Epstein, was going to be used to harass and intimidate her. *See* Plaintiff Jane Doe's Motion for Modification of Magistrate Judge Palermo's Order Schedule settlement Conference, doc. #187. After a response from Epstein (doc. #191), the Court modified its order regarding the settlement conference to avoid harassment of Jane Doe. Significantly, in the final paragraph, the Court (Palermo, J.). starkly commanded:

*The parties are instructed not to communicate, speak or harass one another in any way.* Any violation of this Order will not be tolerated. The parties are instructed to GOVERN THEMSELVES ACCORDINGLY.

Case no. 9:08-cv-80893, Doc. #193 at 2 (italic added, capitalization in original). This Order was entered at 3:29 p.m., EDT, according to the PACER message sent to counsel in the case.

## Intimidating Activities on the Evening of July 1, 2010

In spite of three court orders forbidding contact and harassment of Jane Doe, Epstein has (once again[1]) shown his unwillingness to follow the rules. On the evening

---

[1] For two other examples of Epstein's unwillingness to follow the same rules that apply to other litigants, *see* Plaintiff's Motion in Limine to Prevent Improper Use of the 5th Amendment, doc.

of July 1, 2010, sometime after the issuance of this Court's most recent order, Jane Doe left her house to go to the store and noticed a car (Infiniti SUV, license tag T-KNOLZ) following her everywhere she went. Feeling frightened, she pulled into a driveway in a nearby neighborhood at one point to allow the car to proceed past her, but the car pulled into the neighborhood and stopped nearby. It was clear the person in the car was following her and was intentionally making his presence known. Jane Doe pulled out of the driveway and headed home, with this other car tailing close behind. Once Jane Doe arrived to her house, she went inside and the person following in the Infiniti parked across the street outside her home. Jane Doe called her attorney expressing her fear and asking what could be done to protect her. She observed that the car kept creeping closer to her home every once in awhile.

This intimidation of Jane Doe was so serious that, alerted by Jane Doe's counsel, a retired police officer called the police. The police responded to Jane Doe's home and confronted the man in the car. The man told the police that he was "private investigator." However he would not tell the police who had hired him, only that he was hired to "watch" Jane Doe. The name of the investigator appears to be Thaddeus Knowles. The police reported these facts to Jane Doe, but advised her that they did not have a legal basis to order him to leave the public street. (The police are also preparing a report on the incident.)

Counsel for Jane Doe then arranged for the retired police officer to go to Jane Doe's home. This retired officer arrived at Jane Doe's home at approximately 10 p.m.

---

#178 (recounting Epstein's misuse of the Fifth Amendment during his deposition); doc. #190 (recounting Epstein's willful violations of discovery orders).

He immediately saw a car parked 25 feet from Jane Doe's home, facing her home. He also observed the purported "private investigator" in the car intermittently flashing his high beam lights into Jane Doe's home. The investigator was also intermittently attempting to videotape anyone inside the home. The retired police officer took videotapes of the investigator lighting up the interior of the home with his high beam lights, and also took photographs of this harassing action as well. The videotape and photographs could be provided quickly to the Court upon request.

After consulting with Jane Doe, the retired police officer determined that Jane Doe felt like a prisoner in her own home and that she believed her physical safety and that of her family was threatened if she remained there. She further believed that this intimidation was being orchestrated by defendant Epstein. Jane Doe is not involved in other litigation and is not aware of any other person who would want to do something like this to her. Also, in the last 48 hours, Jane Doe has received telephone calls from two ex-boyfriends that investigators were at their homes, knocking on their doors and trying to talk to them about Jane Doe – apparently because of this case. And, of course, Jane Doe's settlement conference is just four days away and her trial is two-and-half-weeks away.

In light of Jane Doe's concerns, the retired police officer believed that it was best to take Jane Doe from her home. He advised Jane Doe to pack a suitcase and leave the home with him.

At approximately 10:30 p.m., the retired police officer then took Jane Doe in his car and pulled up next to the "private investigator." The retired police officer advised the

investigator that Jane Doe was leaving the home to go to another location and that he should not attempt to follow them. Nonetheless, the investigator attempted to follow the retired police officer as they drove away from Jane Doe's home. The retired police officer then took evasive action and was able to elude his pursuer.

As a result of these activities, Jane Doe feels very threatened. She knows that she was followed for much of the day. She also know that this was not surreptitious surveillance by someone who was trying to discovery something about her, but rather quite visible surveillance by someone whose manifest intent was to make she that Jane Doe knew she was being followed. Thus, when she pulled over, he pulled over; when she parked, he parked visibly close by. The only reason for such activities could be to intimidate her on the eve of the court-ordered mediation. It may also be worth noting that Jane Doe is a petite young woman, physically smaller and younger than the male private investigator who has been following her.

### Past Intimidation of Witnesses By Epstein

The Court should be aware that this is not the first time Epstein has used scare tactics to intimidate witnesses. Indeed, as the Court is aware, despite numerous civil suits being filed against Epstein for sexual abuse, none of the victims in those cases have felt able to proceed to trial. Counsel for Jane Doe have been advised that many of these victims were afraid to take their cases all the way to trial. Jane Doe remains one of only three victims who has had the temerity not to settle her case against Epstein but stand on her right to a jury trial.

CASE NO: 08-CV-80893-MARRA/JOHNSON

In determining who is responsible for the intimidation that took place last night, this Court can consider all of the circumstances, including other documented examples of harassment by Epstein:[2]

*Previous use of "investigators" to scare witnesses*: The use of "investigators" to aggressively harass his victims is not new to Epstein, as investigators have in the past aggressively followed key witnesses to intimidate and scare them. See Palm Beach Police Department Incident Report at p. 86 (Attached as Exhibit A).

*Victim-to-victim communication*: One of Epstein's sexual abuse victims was relayed a message from another victim speaking on Epstein's behalf regarding the criminal investigation of Epstein in 2006: "Those who help will be compensated and those who hurt will be dealt with." *See* Palm Beach Police Department Incident Report, Id. at page 83.

*Witness tampering during the federal investigation:* During the FBI investigation of his sexual abuse of young girls, Epstein intimidated and harassed other possible witnesses against him -- namely Sarah Kellen, and Nadia Marcinkova. Indeed, this intimidation was so serious that federal prosecutors prepared draft federal charges against him for witness tampering charges. (Attached as Composite Exhibit B) Ultimately, for reasons that are unclear, these charges were not filed.

*Threats Against Jane Doe 102*: Epstein has even tracked down adverse witnesses as far away as Australia in the past to send the message not to testify against

---

[2]  The Federal Rules of Evidence do not apply to this motion and, in any event, the federal rules authorize the Court to consider other bad acts in reaching a conclusion about disputed events. *See* Fed. R. Evid. 404(b).

him regarding his illegal sexual exploits. *See Complaint of Jane Doe 102 v. Epstein* (attached as Exhibit C)

*Threats Against Alfredo Rodriguez:*  Jane Doe is not the only person to have received this impression that she is at risk if she does not accede to Epstein's demands. The Court is familiar with Alfredo Rodriguez, an employee of Epstein who kept a "black book" of the names of minor girls Epstein' was sexually abusing.   *See* Criminal Complaint, U.S. v. Rodriguez, No. 9:10-CR-80015-KAM (doc. #3).   Rodriguez stated that he was afraid that Jeffrey Epstein would make him "disappear" unless he had an "insurance policy" (i.e., the black book). *Id.* at 3.

Please find, for the Court's consideration as well Exhibit D, the affidavit of the retired officer that assisted in protecting Jane Doe.

The Court can consider all of this information as circumstantial evidence pointing to only one conclusion: that defendant Epstein is trying to intimidate Jane Doe before her upcoming settlement conference and trial.   This is clear violation of the three court orders outlined above.

## THE COURT SHOULD TAKE APPROPRIATE STEPS TO RESPOND TO THE VIOLATION OF ITS ORDERS AND TO ALER THE STATE COURT TO A POSSIBLE VIOLATION OF ITS ORDER

Defendant Epstein is thumbing his nose at three separate court orders, two from this Court and one from the state court. The threatening message billionaire Epstein is trying to send to Jane Doe is obvious: settle this case next week or you are in danger. This is not the way in which a civil case should be litigated. The Court should not allow defendant Epstein's wealth to be deployed to pervert the course of justice.    In entering

its most recent no harassment order, Judge Palermo indicated that "[a]ny violation of this Order will not be tolerated."    Jane Doe respectfully requests that the Court carry through on this promise and make it possible for her to return safely to her home.

Jane Doe accordingly requests the following actions on an emergency basis:

First, the Court should schedule an emergency hearing today, July 2, 2010, either in court or via telephone with counsel for Jane Doe and Epstein to learn whether Epstein will challenge any of the foregoing facts and the conclusion that he stands in civil contempt of this Court's orders and, if so, how to resolve those factual questions rapidly.  As part of that hearing, counsel for Epstein should proffer whether Epstein will deny that he instigated the harassment that took place last night and answer questions about his involvement or whether instead he will refuse to answer such questions on grounds that they might incriminate him.[3]  The Court should thereafter conduct such further fact-finding as it deems necessary to reach a conclusion about whether Epstein has violated the Court's orders, giving both Jane Doe and Epstein an opportunity to be heard.

Second, the Court should find that Epstein stands in civil contempt of two separate orders of this Court: (1) Judge Marra's long-standing direction "that Defendant is under this court's order not to have direct or *indirect contact* with any plaintiffs," Order, case no. 9:08-cv-808119, doc. #238, at 4-5 (emphasis added), and (2) Judge Palermo's

---

[3] If, as Jane Doe suggests, the Court ultimately proceeds first by way of civil and then only later by way of criminal contempt, Epstein would be entitled to invoke the Fifth Amendment only in the later criminal contempt proceedings. *See Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1243 (11th Cir. 2007) (noting that the right to remain silent attaches to criminal contempt proceedings).  Of course, in any civil proceeding, the finder of fact can draw an adverse inference from an invocation of the Fifth Amendment.

order yesterday that Jane Doe and Epstein "are instructed not to communicate, speak or harass one another *in any way*, Order, case no. 9:08-cv-80893, doc. #193, at 2

Third, the Court should then impose such civil contempt sanctions as it finds, after the hearing, will enable Jane Doe to return safely to her home (or, if necessary, other place of safety) without facing the threat of any further harassment or intimidation. *See Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) ("Civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.").   As part of that determination, plaintiff Jane Doe respectfully requests an opportunity to be heard directly by the Court (either in person or via telephone) so that the Court will have the benefit of her specific concerns in crafting appropriate sanctions and remedies to make her feel safe to return to her home and to prevent further intimidation at the hands of Epstein.

Fourth, as part of the sanction for Epstein's civil contempt, the Court should expand its current protective order so that forbids Epstein or his agents from not only having any contact whatsoever, direct or indirect, with Jane Doe, but also with any of her family members or friends, as well as with any persons who have been identified by Jane Doe as possible witnesses in her case, without first seeking specific approval of the Court.

Fifth, the Court should direct Epstein's legal counsel to file with the Court in advance of the mediation on Tuesday morning a certification that they have explained the requirements of all of these orders with him and have explained to him the serious consequences that could follow from of any additional violations of these orders.

Sixth, Epstein should be directed not to have any agents attempt to follow or surveil Jane Doe as she leaves the courthouse after the settlement conference on Tuesday or after any other court hearings or trial proceedings.

Seventh, this Court should initiate criminal contempt sanctions against Epstein for the violations of its two orders – and provide notice to Epstein that the criminal sanctions could include a possible term of imprisonment. Criminal contempt sanctions are appropriate here because "the criminal contemnor has done that which he has been commanded not to do. The criminal contemnor's disobedience is past, a completed act, a deed no sanction can undo. Accordingly, the criminal sanction operates not to coerce a future act from the defendant for the benefit of the complainant, but to uphold the dignity of the law, by punishing the contemnor's disobedience." *United Minor Workers of America v. Bagwell*, 512 U.S. 821, 845 (1994) (internal citations omitted). The dignity of the law needs to be upheld; this Court need to act to insure Epstein understands that, despite his vast wealth, he remains equal to everyone else in the eyes of the law. In short, this Court needs to stop Epstein from flouting its orders and intimidating Jane Doe;

Because the contempt took place outside the presence of the Court, the Court should proceed in nonsummary fashion. *See* Fed. R. Crim. P. 42(a); *United States v. Baldwin*, 770 F.2d 1550, 1553 (11th Cir. 1985). The procedures for such nonsummary criminal contempt are well settled. As the Eleventh Circuit has explained, "A federal court may punish contemptuous conduct that occurs outside its presence only after giving notice of the essential facts constituting the charged criminal contempt,

requesting that the contempt be prosecuted by an attorney for the government, and affording other procedural protections." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1242-43 (11th Cir. 2007). The Court should therefore begin the process by referring this matter to the U.S. Attorney's Office for the Southern District of Florida or, if that office declines to pursue the matter, such other attorney as may be appropriate. *See* Fed. R. Crim. P. 42(a)(2).

Eighth, because Epstein's actions appear to implicate possible witness tampering, in violation of 18 U.S.C. § 1512(b), and possibly other federal offenses, the Court should additionally refer this matter to the U.S. Attorney's Office for the Southern District of Florida for a criminal investigation.

Ninth, the Court should refer this matter to Palm Beach Circuit Court Judge Deborah Dale Pucillo's criminal division presiding over Epstein's criminal probation for consideration by her of whether Epstein has violated her order as well.

Tenth, the Court should refer this matter to Epstein's probation officer for determination of any violations of his probation.

Eleventh, the Court should request that Epstein pay a fine to Jane Doe's counsel in the amount of $18,000 to cover any and all costs associated with relocating Jane Doe and keeping her safe through her trial date.

## CONCLUSION

The Court should hold a hearing on an emergency basis, find Epstein to be in contempt of the Court's orders, and impose sanctions and take other steps as outlined

CASE NO:  08-CV-80893-MARRA/JOHNSON

by Jane Doe to secure her safety and to permit her to return to her home without

harassment by Epstein.

We respectfully request this Court to seal this Motion and all responses be

SEALED.

DATED: July 2, 2010

Respectfully Submitted,

Bradley J. Edwards
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone (954) 524-2820
Facsimile (954) 524-2822
Florida Bar No.: 542075
E-mail: brad@pathtojustice.com

and

Paul G. Cassell
Pro Hac Vice
332 S. 1400 E.
Salt Lake City, UT 84112
Telephone:   801-585-5202
Facsimile:    801-585-6833
E-Mail:        cassellp@law.utah.edu

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2010 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive electronically filed Notices of Electronic Filing.

Bradley J. Edwards

16

## SERVICE LIST

**Jane Doe v. Jeffrey Epstein**
**United States District Court, Southern District of Florida**

Jack Alan Goldberger, Esq.
Jgoldberger@agwpa.com

Robert D. Critton, Esq.
rcritton@bclclaw.com

Isidro Manual Garcia
isidrogarcia@bellsouth.net

Michael James Pike
MPike@bclclaw.com

Paul G. Cassell
cassellp@law.utah.edu

# UNITED STATES DISTRICT COURT
## Southern District of Florida

Case Number:   08-CV-80893-CIV-MARRA/JOHNSON

JANE DOE

                  Plaintiff

v.

JEFFREY EPSTEIN

                  Defendant

## CERTIFICATION OF EMERGENCY

I hereby certify that, as a member of the Bar of this Court, I have carefully examined this matter and it is a true emergency.

I further certify that the necessity for this emergency hearing has not been caused by a lack of due diligence on my part, but has been brought about only by the circumstances of this case.  The issues presented by this matter have not been submitted to the Judge assigned to this case or any other Judge or Magistrate Judge of the Southern District of Florida prior hereto.

I further certify that I have made a bona fide effort to resolve this matter without the necessity of emergency action.

Dated this ____2____ day of _____jULY_____, 20_10____.

        Signature: _____

        Printed Name:  BRADLEY J. EDWARDS, ESQ

        Florida Bar Number: 542075

        Telephone Number: 954-524-2820

=================================================================================

## FOR CLERK'S OFFICE USE ONLY

I hereby certify that the Judge assigned to this case is unavailable for this emergency (a copy of notification to the Clerk is on file).  In accordance with Local Rule 3.7, the Honorable _____as randomly drawn from the Emergency Wheel.

I hereby certify that the Judge randomly assigned to this emergency is unavailable due to _____. (A copy of notification to the Clerk is on file).  In accordance with Local Rule 3.7, the Honorable _____ _____was randomly drawn from the Emergency Wheel.

Dated this _____ day of _____, 20 _____.

        **STEVEN M. LARIMORE**
        Court Administrator · Clerk of Court

        By: _____, **Deputy Clerk**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-CV-80893-CIV-MARRA/JOHNSON

IN RE PLAINTIFF JANE DOE'S

EMERGENCY MOTION FOR AN

EXPANDED PROTECTIVE ORDER

## AFFIDAVIT OF MICHAEL FISTEN

1. I am an investigator licensed by the State of Florida to conduct investigations and I am employed by the law firm of Farmer Jaffe Weissing Edwards Fistos and Lehrman. One case on which I am working is Jane Doe v. Jeffrey Epstein, No. 08-80893, currently pending in the U.S. District Court for the Southern District of Florida. Before being a private investigator, I spent thirty years in south Florida as a law enforcement officer with a majority of that time investigating homicides, robberies and organized crime. I retired with the rank of Lieutenant, with my last three years assigned to the Miami Field Division of the Federal Bureau of Investigation Joint Terrorist Task Force.

2. On Thursday the 1st Day of July 2010 your Affiant received a frantic telephone call from Jane Doe that she was being followed by a black male driving a silver Infinity wagon. Jane Doe advised your Affiant that the unknown black male followed her from a retail store. She stated that he made no attempt to hide his presence and clearly wanted her (Jane Doe) to have the knowledge that she was being followed. To confirm this, Jane Doe advised your Affiant that she pulled off to the side of the road at which time she observed the unknown black male pull behind her and also stop. Jane Doe advised your Affiant that she then drove to her residential address in unincorporated West Palm Beach County, observing that the unknown black male followed closely behind her the entire distance. Once at her residence Jane Doe advised your Affiant that the unknown black male parked almost directly across form her residence. Jane Doe advised that she was in fear for her safety and the safety of her infant child and grandmother all of which were inside her residence.

3. Jane Doe provided your affiant with the Florida license tag number of the vehicle that was following her. The vehicle tag number T-Knolz **(Exhibit#1)** was registered to Thaddeus Knowles a resident of Palm Beach County. Your Affiant conducted a records search with the Florida Department of Agriculture and discovered that Thaddeus Knowles is a licensed private investigator intern Florida License number CC2800614 **(Exhibit#2)**.

4. At approximately 8:00 p.m., your Affiant contacted the Palm Beach County Sheriffs Office and advised them of the situation. They advised that they were responding to the home of Jane Doe to access the situation. They also advised your Affiant that a private investigator had called the communications center and advised that he would be on surveillance in the vicinity of Jane Doe's residence.

5. At 8:05 p.m., your Affiant received a call from the Palm Beach Sheriff's Office and advised that they made contact with Thaddeus Knowles and verified that he was a licensed private investigator. The deputy advised your Affiant that Knowles admitted to him that he was watching Jane Doe, but he would not divulge to the deputy who hired him. The deputy cautioned Knowles not to go near Jane Doe or enter her property. The deputy cleared the scene and authored an incident report under Palm Beach case number 10-095370, although that report has not been obtained yet.

6. At 9:00 p.m., your Affiant contacted Jane Doe who stated that she continued to be in fear for her safety. Jane Doe advised that the investigator is still outside her house and that he had moved closer to her front gate.

7. At 9:45 p.m., your Affiant responded to the residence of Jane Doe to conduct an investigation. Your Affiant arrived on the scene and observed Thaddeus Knowles parked in his silver Infinity wagon approximately 50 feet north of Jane Doe's residence. Your affiant observed Knowles position his vehicle in a manner where he faced the front of Jane Doe's residence. He made no attempt to conceal his presence which would be the normal course of business for an investigator conducting surveillance. It was obvious to your Affiant that the manner in which Knowles was positioned it was with the sole intent to convey to Jane Doe that she was being watched.

8. Your Affiant approached Knowles who refused to engage in conversation. Your Affiant then photographed Knowles and his vehicle to depict the proximity between his vehicle and the residence of Jane Doe **(Exhibit#3)**. Your Affiant was able to clearly see that Knowles was video taping Jane Doe's residence **(Exhibit#4)**.

9. Your Affiant then approached Jane Doe at her residence; she was clearly shaken and was convinced that this was being done at the behest of Jeffrey Epstein. While speaking with Jane Doe, the investigator, Knowles, repositioned his vehicle closer to Jane Doe's front yard, activated his high beam headlights and preceded to video your ~~Affiant and~~ Jane Doe **(Exhibit#5).**

10. Your Affiant was advised by Jane Doe that the actions displayed by Knowles were so egregious she did not feel safe staying in her own home and was intimidated into abandoning her residence. Jane Doe decided to relocate to alternative living quarters and is in fear of returning to her home and in fear for her family.

11. At approximately 11:00 pm, your Affiant drove Jane Doe to the alternative living quarters, but prior to doing so, your Affiant confronted Knowles again. Your Affiant identified myself to Knowles, advised him that I was leaving with Jane Doe, that she is in fear for her safety and not to follow us. As your Affiant drove away from the residence with jane Doe, Knowles immediately started his vehicle, initiated a u-turn and attempted to follow your Affiant and Jane Doe. Based on your Affiant's training and experience I was able to take evasive driving maneuvers and evaded any further surveillance.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

Dated this 2nd day of July, 2010.

Michael Fisten, Legal Investigator

The foregoing instrument was acknowledged before me this 2nd day of July, 2010 by MICHAEL FISTEN, who is personally known to me.

NOTARY PUBLIC

Print Name: Beth Williamson

My Commission Expires:

BETH S. WILLIAMSON
MY COMMISSION # DD895350
EXPIRES June 02, 2013
(407) 398-0153    FloridaNotaryService.com

# **EXHIBIT #1**



# **EXHIBIT #2**

Florida Department of Agriculture and Consumer Services
## Division of Licensing



Licensing Home | Comments | Questions | Complaints | Email

## **Public Access System**

### **KNOWLES, THADDEUS L**

| **License Number** | **Expires** | **Status** |
|---|---|---|
| CC2800614 | 08/20/2010 | RENEWAL NOTICE SENT |

### **Restricted**

**The home address and telephone number for this individual is restricted from public record in accordance with Section 493.6122, F.S.**

### **Companion License**
None

New Search

## EXHIBIT #3



Knowles Vehicle

Jane Doe

Driveway

# **EXHIBIT #4**



# EXHIBIT #5

